GREENE COUNTY GUIDANCE
CENTER, INC., APPELLANT, *v.*
GREENE-CLINTON COMMUNITY
MENTAL HEALTH BOARD,
APPELLEE.

(No. 84-CA-51—Decided
October 5, 1984.)

*Mike Fain* and *Dennis L. Patterson,*
for appellant.

*Jerome G. Menz,* for appellee.

*Denis J. Murphy* and *Donald B.
Leach, Jr.,* urging affirmance for
*amicus curiae,* Ohio Assn. of Communi-
ty Mental Health Bds.

*Raymond A. Swope, Jr.,* urging
reversal for *amicus curiae,* Ohio Council
of Community Mental Health Agencies.

MCBRIDE, J. The complaint, filed
May 24, 1984, sought a temporary and
permanent injunction against the

Greene-Clinton Community Mental Health Board (648 Board) to prevent the termination of the contract the complainant, Greene County Guidance Center, Inc. (agency), had with the 648 Board and to prevent the 648 Board from contracting with another. On May 28, 1984, a temporary restraining order was denied, and a hearing on the merits and on a preliminary order were consolidated and assigned for trial on June 1, 1984.

On May 31, 1984, the complainant filed an amended petition and moved for a summary judgment.

The hearing commenced on June 1, 1984, and was continued to June 11, 1984. However, on June 7, 1984, a Civ. R. 12(B)(6) motion to dismiss was filed, accompanied by affidavits in the alternative in opposition to motion of appellant for summary judgment.

On June 11, 1984, a judgment in favor of the defendant-appellee was filed. The final entry of June 11, 1984, indicates that the matter was heard on the amended complaint, the motion for a temporary restraining order and the Civ. R. 12(B)(6) motion to dismiss. The brief entry concludes:

"It is ordered judgment is hereby entered in favor of the defendant on the issues raised on plaintiff's Amended Complaint, Motion for temporary restraining order and the affidavits therein."

The procedural posture of the case is unusual. Acceleration of the trial and decision on the merits pursuant to Civ. R. 65(B)(2) rendered futile any efforts on the pending motions which would have tested the pleadings under Civ. R. 12 or under the motion for summary judgment under Civ. R. 56. The record is replete with copies of discovery items, depositions, affidavits, and related material, but is otherwise silent as to how such material could be considered unless introduced at the trial. Since the case was disposed of at the end of the

plaintiff's case, as will be discussed later, the test for the validity of the claim of the plaintiff is the sufficiency of the evidence when liberally construed in favor of the claimant. Preponderance of the evidence and credibility of the witnesses never became an appropriate test.

During oral argument on appeal concern was voiced as to the method of termination at the trial. The record indicates an awareness of the two pending motions. In addition, at the June 11, 1984 hearing and after the plaintiff rested, the defendant moved for an order that the evidence be arrested and judgment be granted for the 648 Board. Accordingly, the court had before it three motions to terminate, not one of which was on the preponderance of the evidence. At the conclusion of argument, the trial judge orally ruled, as follows:

"So, therefore, it is the ruling of this court that the plaintiff's Motion for Injunctive Relief is denied. The motion to dismiss is granted. The Judgment is for the defendant, and counsel for the defense may prepare an entry accordingly."

Construed with the final entry filed the same day, the action the court took was to arrest the case at the end of the plaintiff's case and award judgment to the defendant. The procedural steps toward summary judgment were never completed. The confusion in the posture of the case on appeal was a result of the accelerated procedure, evidencing urgency for a final resolution. The same urgency was brought to the attention of this court.

Along with such urgency is a representation by two statewide associations of conflicting interests comparable to that of the parties. Each filed a brief *amicus curiae,* urging resolution of problems of construction arising under R.C. Chapter 340 which established 648 Boards as the state's conduit of public

health funds by way of contracts with private agencies.

However significant and interesting, the instant action is one for an injunction, hurriedly tried before the issues were clearly established, and disposed of by way of a directed verdict. The issues are confined to the sufficiency of the evidence produced at the trial and bear no resemblance to those attainable in a declaratory judgment action. In this connection, it is repeated that this case proceeded to trial on the merits as ordered by the court and was disposed of on an oral motion for directed verdict based on such evidence as was introduced.

At the outset, one issue may be eliminated. Relying upon *Psychiatric Emergency Evaluation & Referral Service, Inc.* v. *Cuyahoga Cty. Mental Health Bd.* (May 20, 1982), Cuyahoga App. No. 44497, unreported (Markus, J.), the appellee argued that the appellant failed to offer any evidence that the action of the appellee was arbitrary and capricious in refusing to renew the contract for services by the appellant. The appellant conceded this point in argument, as follows:

"We submit to the court that that is very true. There is no evidence of that fact. That is not an allegation in our complaint.

"The sole thrust of our complaint is that the 648 Board acted in an illegal manner, not that it abused its discretion, so there was no reason for us to submit any evidence in that regard."

The conflict between the parties surfaced over a year earlier when the 648 Board resolved to merge or consolidate the delivery of mental health services from four agencies to one. This was accomplished and the agency accepted the contract; however, disagreements and lack of harmony in fiscal and administrative matters persisted, and resulted in termination of the contract with appellant. The real issue is best expressed by appellant's witnesses who complained that the 648 Board and the contracting agency were not treated as equals. The agency sought and seeks now by way of injunction to establish itself as an autonomous institution in fiscal and administrative affairs as well as the kinds of services provided. The word autonomy is not ours. It was mentioned repeatedly by witnesses for the appellant. Autonomy is a condition of complete independence without any outside control.

In the interest of judicial economy, we will consider separately the issues assigned by appellant as error.

I

"The 648 Board's purported termination and non-renewal of its contract with the guidance center was motivated by its desire to, and was part and parcel of its scheme to, direct and control the activities of its contract agency, in violation of O.R.C. Section 340.03(G)."

Appellant relies upon two sentences that appear in R.C. 340.03(G), which section otherwise outlines the power and duty of a 648 Board in performing its function as a public agency for the county or counties within its district for the purpose of planning mental health needs and programs, contracting for services with public or private agencies, and auditing programs as well as fiscal operation, and including approving salary schedules for employees, of agencies and facilities operated under contract with the 648 Board. The board has extensive and overall authority for local mental health funds and is an arm of the county commissioners in this area of public concern. R.C. 340.03(A) through (J). The two sentences upon which appellant relies appear in subsection (G), as follows:

"Nothing in this *division* authorizes a board to administer or direct the daily operation of any community mental health contract agency. However, an

agency may contract with a board for administrative services or staff direction to be provided by the board under the direction of the agency board." (Emphasis added.)

With respect to the first sentence, there is in this case a trace of misunderstanding in one or two insignificant instances, but an otherwise total failure to establish interference by appellee in the daily operation in the delivery of services to clients by appellant. The second sentence relates to the appellant-agency and is no more than a permissive right enabling the agency, if it desires, to seek a provision in its contract for administrative services or staff direction by the 648 Board. There is nothing limiting the authority of the 648 Board as otherwise expressed in this or any other division of this section.

These sentences cover two separate subjects and must be construed together with the other statements in the statute. The 648 Board has control over administrative and fiscal duties, but this is not intended to authorize control over the daily delivery of professional services undertaken by the contracting agency.

The argument that the 648 Board and the contracting agency are equal partners and that the agency is an independent contractor free of control by the 648 Board is misguided and false. The board is a public authority created by law to carry out a public purpose in a limited area of sovereign responsibility for a public purpose with public funds. The agency with which the board contracts is a private corporation employed by the board under the conditions of the statute and the terms of its contract to render services. The agency is not completely autonomous.

The 648 Board has the primary responsibility for the mental health program in its county or district. In contracting with the board, an agency does not have equal power nor does it become an equal partner with power equal to that of the statutory board. While the agency is free of control in the daily rendition of services, such independence is not protected in the fiscal and administrative responsibilities in the use of public funds entrusted to the control of the 648 Board. The funds in question are deposited with the treasurer of the county and available only to the board for purposes approved by such board, which has additional residuary authority to establish standards, procedures and such other duties as may be necessary and proper to carry out the purposes of R.C. Chapter 340. R.C. 340.03(J).

In the absence of evidence of an abuse of discretion and of a direct violation of statute, this assignment of error is denied.

## II

"The 648 Board's purported termination and non-renewal of its contract with the guidance center violated O.R.C. Section 121.22, the 'Sunshine Law.'"

There are two tests for invalidity for violation of R.C. 121.22. The first requires adoption at a public meeting. The action taken here was adopted at a public meeting after discussion by those present. The second test invalidates a resolution adopted at a public meeting *that results from deliberations* in a meeting not open to the public. The subject was discussed at an executive meeting.

As the trial judge orally commented, the testimony revealed that the subject of the discussion was ongoing for at least a couple of years. The discussions related to conflicts over programs, monitoring of activities, and fiscal and administrative control involving the contract, renewed at times for limited periods, which contract was eventually terminated.

The appellant initially served a notice of intent to terminate the rela-

tionship as it demanded what appellant's witnesses describe as an autonomous contract. The appellee considered this demand a non-negotiable item. The subject matter became an issue of public concern, particularly during the period the levy for mental health services was up for a vote, and was one of general public discussion.

Under these circumstances, the mere statement that the subject of renewing or not renewing the contract with the agency was discussed at an executive session falls short of the second test in the "Sunshine Law" that the public action be deliberated to the extent that it was the cause of the public resolution. Accepting the broadest definition of the word "result," there is still the necessity for establishing some deliberation on the specific resolution.

The continuous turmoil over appellant's demands, the submission of the levy and the inflexibility of the parties was a common subject of conversation and discussion in the community and the media. The problems were a natural source of public discussion. It would have been unnatural for those representing the parties not to have also discussed the subject. These circumstances, together with the lack of any evidence of the nature and extent of what was discussed, point to the fact that the evidence fails to support the claim that such unknown conversations constituted deliberations that resulted in the public action. The challenge to the legal authority of the 648 Board had also reached a point that litigation was a reasonable prospect. We learn from the briefs that there was a tape of the executive session, but it was not produced. There is no evidence of the second legislative test for a violation of the "Sunshine Law."

This assignment is denied.

III

"The 648 Board's purported termination and non-renewal of its contract with the guidance center violated the notice requirement of O.R.C. Section 340.03(G)."

R.C. 340.03(G) includes a provision that:

"If either the board or an agency with which it contracts for mental health services, programs, or facilities proposes not to renew the contract or proposes substantial changes in contract terms, the other party shall be given written notice at least one hundred twenty days before the expiration date of the contract. The other party may request advisory mediation within thirty days after receipt of written notice. If the parties agree to such mediation, the mediation shall be completed within sixty days unless both parties agree to a time extension. The chief of the division of mental health facilities and services shall adopt rules establishing mediation procedures."

In the *Cuyahoga County Mental Health Board* case, *supra,* the board delivered a notice fifty-three days before the expiration of the contract with the agency. The court of appeals held such notice invalid and void and required funding to continue until the one hundred twenty day notice was delivered. The court said at 20:

"The roughly four-month notice is expressly intended to provide an opportunity for renegotiation or mediation. It is impliedly intended to afford the agency time to make necessary arrangements for alternative funding or staff and facility adjustments. Social service agencies must make commitments for personnel, equipment, and premises at which to conduct their activities. Those commitments may extend for several months, so the statute affords them protective notice."

In the instant case a statutory notice was delivered by both parties. Unhappy with its contract the appellant-agency delivered a notice on January 5, 1984.

There had been no progress on an acceptable contract and "one last attempt" was made by appellant; if that failed, the agency indicated it would go out of business and turn its operation over to the 648 Board. This notice was accompanied by a letter of explanation. Appellant had accepted a ninety-day contract for the period beginning January 1, 1984. The interim contract was again extended by action of the board on March 2, 1984, accepted by the appellant by letter on March 16, 1984, to continue the delivery of services. Since appellant accepted a renewal, however objectionable and brief its duration, it may be accepted that the statutory notice of its demands or termination was abandoned and waived in March 1984. Beginning on July 1, 1983, the parties operated on ninety-day contracts instead of one year, as had been the practice.

However, by letter dated March 1, 1984 and delivered March 2, 1984, the 648 Board notified the appellant that:

"The Greene-Clinton Community Mental Health Board as a matter of due process and housekeeping acted this date to provide the statutory one hundred twenty day notice of its intent to propose substantial changes in the contract for fiscal year 1985, or to not renew a contract with the Greene County Guidance Center for fiscal year 1985 which begins on July 1, 1984."

Appellant concedes that the notice was timely given, and contends that it was equivocal, containing mutually exclusive alternatives and that the decision not to renew was not made until May 10, 1984. We find no merit in these arguments.

The notice required by R.C. 340.03(G) is not one of termination. In the words of the statute, the notice is required when either party "proposes not to renew the contract or proposes substantial changes in contract terms." In our opinion, the language of the letter fully complies with the purpose of the statute and follows the language used by the legislature. Negotiations continued and actual termination followed later; however, termination was proposed in the notice which fully complied with the statutory requirement.

There is no merit to this assignment of error.

IV

"A tax-exempt, not-for-profit corporation that suffers an illegal failure to renew or termination of a funding contract which does not provide for profit, but merely for the payment of the corporation's expenses, would not appear to be able to recover the lost profits of the non-renewed or terminated contract as money damages, and has no apparent adequate remedy at law."

This assignment is in response to a superfluous statement of the court as to monetary damage, which is not an issue in this case. It relates to rationale, but not to the judgment of the court. The argument that a corporation not for profit has no legal right to recover damages stretches the imagination and is not supported by any authority.

The fourth assignment is denied.

The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN, P.J., and KERNS, J., concur.

MCBRIDE, J., retired, of the Second Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.