SCHANK ET AL. *v.* HEGELE, SUPT., ET AL.

McCONKEY *v.* HEGELE, SUPT., ET AL.

(Nos. CV-87-49 and -50—Decided May 4, 1987.)

Court of Common Pleas of Morgan County.

*Donovan Lowe,* for plaintiffs.
*Richard L. Ross,* for defendants.

SAFRANEK, J. This matter came before the court on April 28, 1987 for a consolidated hearing on plaintiffs' motions for preliminary injunctions.

Plaintiffs, Keith Ellis and Jim McConkey were suspended from school for ten days for damaging school property. In the course of serving these suspensions, they were expelled by defendant Budd G. Hegele, Superintendent, and the defendant Board of Education, Morgan Local School District, upheld the expulsions upon appeal. This court issued orders temporarily restraining defendants from expelling the students, first until the board could hear the appeal, and then until a hearing on the motions for preliminary injunctions could be held. The last restraining order was extended for four days while the matter was taken under advisement.

Plaintiffs raise several grounds for enjoining the expulsions imposed. These include the contentions that the hearsay evidence introduced at the suspension hearing and the lack of any new evidence at the expulsion hearing render the expulsions without justification; that the rules governing the expulsion of students, as promulgated by the board of education, are so vague and indefinite as to constitute an improper delegation of authority to the superintendent, contrary to the basic values underlying the principles of due process; that the dual functioning of Hegele as an investigator and a hearing officer violated due process; that the provisions of the "sunshine law" were violated; the suggestion that the

concurrent processing of school expulsions and criminal and delinquency matters puts an undue chill on the exercise of Fifth Amendment rights; and finally, a general contention that punishment is not for the schools, whose function is education, but is a matter that should be left to the courts.

In the course of the hearing on plaintiffs' motions for preliminary injunctions, defendants orally moved to dismiss, contending that the court had no jurisdiction. The gist of the contention is that the plaintiffs have an adequate remedy at law, a discussion of which is found *infra*.

The task of the court at this point is to determine whether a preliminary injunction is necessary to preserve and protect the ability of the court to provide full and effective relief upon deciding the merits. The court thus proceeds not to decide the issues, but to measure the strengths of plaintiffs' claims, weigh them against the concerns of the defendants, and to consider the relative injuries to be incurred by the parties as a result of maintaining or not maintaining the *status quo*.

Plaintiffs' most general contention that the schools should not be dealing with the matter of punishment, since there are pending delinquency and criminal proceedings, has no merit. R.C. 3313.66 clearly contemplates expulsions as well as suspensions for good cause and without regard to whether delinquency or criminal proceedings are pending as a result of the same conduct.

The contention of plaintiffs that the lack of all but hearsay evidence at the suspension hearing and the lack of any new evidence at the expulsion hearing render the expulsions without justification is likewise without merit. What is constitutionally required is

that a student "be told what he is accused of doing and what the basis for the accusation is." *Goss* v. *Lopez* (1975), 419 U.S. 565, 582.

Plaintiffs' contention regarding the alleged vagueness of the board's rule also seems not to be strongly supported at this point. The rules, introduced into evidence as plaintiffs' Exhibit II, appear to meet constitutional requirements. *Esteban* v. *Central Mo. St. College* (C.A. 8, 1970), 415 F. 2d 1077.

Plaintiffs also object that the superintendent acted both as a hearing officer and an investigative officer. An investigative officer is not *per se* disqualified from conducting hearings, although a lack of impartiality in fact would of course violate the students' due process rights. *Sullivan* v. *Houston Indep. School Dist.* (C.A. 5, 1973), 475 F. 2d 1071.

In this connection, the concern that Hegele's contact with board members, relative to the appropriateness of expulsion, prior to his determination to expel, may have influenced his judgment is not unjustified. Testimony to the effect that he, Hegele, had heard from all board members — that they had all volunteered their views on the appropriateness of expulsion to him prior to his promulgation of the expulsion order — does not necessarily establish prejudice. It does indicate the possibility of pressure which, when combined with his role as an investigative officer, bears scrutiny.

Of equal or greater concern is the effect these volunteered views may have had on the ability of the members of the board to fairly consider the appeals of Ellis and McConkey. If a board member had urged the superintendent to follow the course of expulsion, then that board member might feel compelled to affirm the superintendent's

order of expulsion regardless of what merit there might be to the students' contention that the board should reinstate them instead.

Several cases indicate that a procedural defect in an initial hearing can be cured by a subsequent hearing. *Sullivan, supra; Winnick* v. *Manning* (C.A. 2, 1972), 460 F. 2d 545. No cases have been brought to the court's attention, and the court has found none, on the effect of procedural defects in the course of an administrative appeal. But it would seem that a possibly tainted appeal might arguably amount to a due process deprivation of such significance as to void an expulsion.

The students were entitled to fair consideration as to why they should not have been expelled, whether the evidence established cause or not. The possibility of taint suggests that they may not have received such consideration.

Plaintiffs further contend that the provisions of Ohio's "sunshine law" (R.C. 121.22) have been violated. It is stipulated by the parties that the board went into an executive session during the course of its hearing on appeal of the expulsion orders promulgated by the superintendent, that the superintendent was present at the executive session, and that neither plaintiffs nor their counsel were present.

R.C. 3313.66(E), which pertains to appeals to a school board of expulsion orders of a superintendent, provides in part that, "[a]t the request of the pupil, or his parent, guardian, custodian, or attorney, the board or its designee may hold the hearing in executive session, but shall act upon such suspension or expulsion only at a public meeting." The implication is that a board may not consider whether to reinstate an expelled pupil in executive session unless the pupil or someone acting on his behalf so requests. This implication is strengthened by the principle of statutory construction that statutes *in pari materia* should be construed together, 2A Sutherland Statutory Construction (1984) 449, Section 51.01, and the language of R.C. 121.22(A), which deals with meetings of governmental bodies generally, and provides that R.C. 121.22 "shall be liberally construed to require public officials to take official action and *to conduct all deliberations upon official business only in open meetings,* unless the subject matter is specifically excepted by law." (Emphasis added.)

Although the court, quite possibly erroneously sustained the objection of defendants to testimony as to details of the occurrences in the executive session, Hegele did indicate that the *Ellis* and *McConkey* cases were discussed. Further, he testified that the executive session was requested by a board member. The executive session would be a basis for invalidating the expulsions if, but only if, the affirmance resulted from deliberations occurring at the executive session. *Greene Cty. Guidance Center, Inc.* v. *Greene-Clinton Community Mental Health Bd.* (1984), 19 Ohio App. 3d 1, 19 OBR 46, 482 N.E. 2d 982. At this point, what can be said is that such may have in fact occurred.

The suggestion that the executive session was proper, in any case, because of the board's need to be advised concerning legalities, seems strained, as the board was not closeted with its legal advisor, but with the superintendent.

Finally, plaintiffs suggest that the concurrent processing of school expulsions and criminal and delinquency matters, allegedly growing out of the same incident, puts an undue chill on the exercise of Fifth Amendment rights. The suggestion is interesting in light of R.C. 3313.66(B)(2) which seems to put the burden on a pupil to "challenge the reasons for the intended expulsion or otherwise explain the

pupil's actions." As neither counsel has, at this point, provided the court with much law on which it might make a judgment, plaintiffs' suggestion will not be discussed further.

To summarize, although some of plaintiffs' contentions regarding procedural unfairness seem to be without significant merit, others appear to be far from spurious. It is significant that the injury to plaintiffs would be great if the expulsion procedure was violative of their rights.

Since the state of Ohio has established a right to a public education, the Fourteenth Amendment prohibits the state, through its agency, the school board, from depriving persons of that right without due process of law.

It is fair to say that the plaintiff pupils are at a critical juncture in their lives. Derailment of their high school education at this point might or might not be final. The court specifically finds that plaintiffs would suffer irreparable injury if the students were presently excluded from school and ultimately if it were determined that their procedural rights were violated so as to render their expulsions invalid.

Addressing the injury to defendants which would be caused by a preliminary injunction, the court notes that the superintendent's letters announcing the expulsions express no concern that the presence of the expelled pupils would pose an ongoing threat of disruption to the educational process. Further, neither the testimony of Hegele nor that of Principal Mental included any mention of any further difficulties caused by Ellis or McConkey.

Mental did testify that there was some concern, among the students as to the effect the presence of Ellis and McConkey might have on graduation exercises. The court shares this concern. Were graduation impending, this concern might be cause for limiting the scope of an injunction. It would be that, inevitably, non-participants would be inconvenienced, and more importantly, the balance of potential injuries would be different.

The court now considers the contention of defendants that plaintiffs have an adequate remedy at law — R.C. Chapter 2506.

Certainly, defendants are correct that an injunction will not ordinarily issue where adequate relief may be had by an appeal, and that the rule applies to administrative determinations. 56 Ohio Jurisprudence 3d (1984) 130, Injunctions, Section 29. However, the Ohio Supreme Court has stated in *Haff* v. *Fuller* (1888), 45 Ohio St. 495, 497-498, 15 N.E. 479, 480, that "[t]he operation of the rule is not extended * * * to cases where 'the steps are regular in form, so that the illegality does not appear on the face of the proceedings themselves.' "

Obviously, to the extent that the plaintiffs propose to establish that the superintendent was not impartial as a hearing officer, based in part on the extent and the nature of his contacts with board members, in which they volunteered their views on the appropriateness or inappropriateness of expulsion, there is a clear need to resort to evidence outside the record.

This is likewise true with respect to whether the appeal to the board may have been tainted as a result of board members feeling compelled to affirm a course of action they had originally urged upon the superintendent.

It would also appear that evidence outside the record will be necessary for a resolution of the "sunshine law" claim. The stipulation of the parties is to the effect that the superintendent was present at the executive session of the board. No mention is made of the presence of a stenographer.

Damages would clearly be inade-

8

quate as a remedy herein, for what is at stake is the dislocation and the possible derailment of educational careers, with potential lifetime effects.

The court specifically finds that plaintiffs have no adequate remedy at law.

The circumstances under which a preliminary injunction ought to issue were well summarized in *Gould* v. *Chesapeake & Ohio Ry. Co.* (C.P. 1910), 10 Ohio N.P. (N.S.) 129, 21 Ohio Dec. 733, paragraph one of the headnotes:

"A temporary restraining order or a preliminary injunction is a provisional remedy, and is allowed or disallowed without intention on the part of the court of thereby forecasting what may be the final decree on full hearing; and on the question of allowing such an order and permitting it to continue until a full hearing is had, the relative rights of the parties and the injury to each by a continuance of the order will be considered, and the *status quo* will be maintained by granting the order where the injury to the moving party will be immediate, certain and great if it is denied, while the loss or injury to the opposing party by its continuance will be comparatively insignificant."

Here, the potential injury to the plaintiffs is great if it is ultimately determined that the expulsion procedure was violative of the students' rights and yet they are not allowed to attend school pending such determination. In contrast, the injury to defendants arising from the students' remaining in school for the present, even if it is ultimately determined that they were afforded all procedural fairness, is minimal.

Accordingly, the *status quo* should be maintained. Plaintiffs' motions for preliminary injunctions enjoining the defendants from expelling Ellis and McConkey during the pendency of the action are well-taken; and they are granted in separate orders filed with this decision.

Defendants' motion to dismiss is denied, *Haff* v. *Fuller, supra.*

*Judgment accordingly.*