DECISION.
{¶ 1} This matter began with the publishing of a guest column in the Northwest Press on October 15, 2003. The column was written by Chris Heather, a member of the Northwest Local School District Board of Education. In the column, Heather criticized the past actions of the board and asked residents to support the candidacy of two non-incumbents in the next election. Bill Lambert, who was also a school board member, sent an email to two other school board members telling them that in his opinion the column misstated certain facts. He suggested that he and the other four members of the board should consider a response. There was only the one e-mail — no responses and no follow-ups. One of the recipients of the e-mail, board member Dr. Susan Mosley Howard, later composed a draft letter as a response. Dr. Mosley Howard spoke by telephone to board member Pamela Detzel about possible points to be made in the letter.
 {¶ 2} The board met next on Monday, October 20, 2003. Dr. Mosley Howard brought her letter to the meeting and before the meeting distributed it to the other board members. None had seen the letter to this point. Four members, including Howard, agreed to sign it. Dr. Mosley Howard then read the letter at the public board meeting during the "community communication" portion.
 {¶ 3} Mark Haverkos, who seems to have a long history of opposition to the school board, filed suit against the Northwest School Board and four of its members. Haverkos charged that the four members had violated R.C.121.22, known as the Sunshine Law. He asked for injunctive relief, attorney fees, and civil forfeiture. Cross-motions for summary judgment were argued, and the trial court granted the motion of Haverkos and denied that of the school board and the four board members. Haverkos now appeals, asserting two assignments of error.
 {¶ 4} In his first and second assignments of error, Haverkos contends that the trial court erred by denying his request for attorney fees and by failing to award a civil forfeiture for each claimed violation of the Sunshine Law. These assignments are mooted by our resolution of the defendants-appellees' cross-assignment of error. In their cross-assignment, they contend that the trial court erred by granting Haverkos's motion for summary judgment and by denying their cross-motion for summary judgment. We agree.
 {¶ 5} The Sunshine Law provides that it "shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law."[1] It is not contended that the subject matter here at issue was so excepted. The first issue that can be quickly disposed of is Haverkos's standing to bring this action. The statute states, "Any person may bring an action to enforce this section."[2]
 {¶ 6} In order to prevail on a claimed violation of the Sunshine Law, one must demonstrate that there was (1) a pre-arranged (2) discussion (3) of the public business of the public body in question (4) by a majority of its members. We are convinced that Haverkos's claim failed on all four elements.
 {¶ 7} A meeting is defined as a pre-arranged discussion by a majority of the members of the board.[3] There were three contacts of the board members at issue in this case. First, an e-mail was sent by one board member to two others saying that he disagreed with the newspaper article and suggesting that they might want to consider a response. The e-mail was unsolicited by the other members and not expected. Lambert sent only the one, and no one responded by e-mail. This clearly was not a pre-arranged meeting. Second, Detzel called Dr. Mosley Howard by telephone to discuss the response letter, again not pre-arranged, and this did not involve a majority of the board. One-on-one conversations between individual board members did not constitute a "meeting" under the Sunshine Law.[4] The last event occurred when Dr. Mosley Howard brought the draft letter to the public board meeting on October 20, 2003. At this meeting, she distributed the letter to the other board members and read it at the meeting.
 {¶ 8} The Schuette case cited by Haverkos[5] overturned a Civ.R. 12 (B)(6) ruling against dismissal of a complaint alleging a violation of the Sunshine Law. But in that case, the pre-arrangement was clear. Township trustees met secretly with certain residents of the township on public property. They discussed business of the township, and the meeting had been called by way of distribution of a letter to those invited to attend. These were very different facts regarding pre-arrangement than those in this case.
 {¶ 9} The next issue is whether a "discussion" took place under the Sunshine Law. The one-on-one phone call did not qualify as discussed above, and the distribution and reading of the letter was at a public meeting. So the act at issue was the e-mail message sent by one board member to two others. Three would constitute a majority of the five-member board. Haverkos argues that since the law states that it must be liberally construed in favor of openness, this incident should have been considered a discussion. First, it is difficult to construe one e-mail from one person to two others, with no responses or counter-responses, as a discussion. But the more important issue is whether an e-mail can be considered a discussion under Ohio's Sunshine Law. Most cases cited by Haverkos that include e-mails in a sunshine law come from states that have language in their sunshine laws that specifically includes electronic communication. These include Nevada,[6]
Utah,[7] and Colorado.[8] In the state of Washington, e-mail communication is not mentioned in the statute, but a court there has concluded that the legislature intended a broad definition of a discussion or meeting, so the court itself included electronic communication in the definition of a meeting.[9] But the court said that the mere use or passive receipt of e-mail did not automatically constitute a meeting, and the participants had to collectively intend to meet in order to transact official business. In this case, the e-mail message was passive, and as we will discuss later, no official board business was discussed. So even under Washington's expanded interpretation of a sunshine law, the facts of this case would not constitute a violation. Ohio's law makes no mention of electronic communication as being subject to the law, and no Ohio case holds that it is. The statute was revised in 2002, and language about electronic communication was not included in the revision. Since the legislature chose not to include electronic communication in the statute, we hold that Ohio's Sunshine Law does not cover e-mails.
 {¶ 10} Finally we review the question whether public business was discussed privately by a majority of the board members. The letter composed by Mosley Howard did not mention any pending rule or resolution before the board. And the board, as a result of the letter, took no official action. The Ohio Supreme Court has said that it is not necessary for the board to reach a decision on a measure to prove a violation of the act,[10] but mere discussion of an issue of public concern does not mean that there were deliberations. If a resolution is passed at a public meeting as a result of private deliberations, that resolution is invalid.[11]
 {¶ 11} In this case, the contacts were informal and not pre-arranged. The e-mail, the phone call, and the Mosley Howard letter concerned election politics, not school board business. There was no pre-arranged meeting of a majority of the board members, but if there had been and it was only to discuss the campaign, this would not have been a violation of the Sunshine Law, as it would not have fulfilled the requirement that public business was discussed. Cases where a violation was found show clearly that actual public business was discussed. In Carver,[12] the court found that a board of township trustees had met over a period of time to discuss certain settlement terms of a lawsuit. In the Specht[13]
case, the trustees had private deliberations about hiring a new police chief, clearly public business. They then took a public vote to officially hire him after having decided the issue in private. "The nature and purpose of R.C. 121.22 support the interpretation that the statute is intended to apply to those situations where there has been actual formal action taken; to wit, formal deliberations concerning the public business."[14] Such was not the case here.
 {¶ 12} Because we cannot conclude that a majority of the school board engaged in a pre-arranged meeting to discuss public business, we sustain the cross-assignment of error, reverse the judgment of the trial court, and remand this cause for the entry of judgment in favor of the defendants-appellees in accordance with the terms of this decision.
Judgment reversed and cause remanded.
Doan, P.J., and Hendon, J., concur.
[1] R.C. 121.22(A).
[2] R.C. 121.22 (I)(1).
[3] R.C. 121.22(B)(2).
[4] State ex rel. Floyd v. Rock Hill Local School Bd. of Edn. (Feb. 10, 1998), 4th Dist. No. 1862.
[5] State ex rel. Schuette v. Liberty Twp. Bd. of Trustees, 5th Dist. No. 03-CAH-11064, 2004-Ohio-4431.
[6] Nev.Rev.Stat.Ann. 241.030.
[7] Utah. Code Ann. 52-4-2, and 52-4-7.8.
[8] Col.Rev.Stat.Ann. 24-6-402(2)(d)(III) and 24-72-204.5.
[9] Wood v. Battleground School Dist. (2001), 107 Wash.App. 550,27 P.3d 1208.
[10] State ex rel. Delph v. Barr (1989), 44 Ohio St.3d 77,541 N.E.2d 59.
[11] Greene Cty. Guidance Ctr., Inc. v. Green-Clinton Community MentalHealth Bd. (1984), 19 Ohio App.3d 1, 482 N.E.2d 982.
[12] Carver v. Twp. of Deerfield (2000), 139 Ohio App.3d 64,742 N.E.2d 1182.
[13] Specht v. Finnegan, 149 Ohio App.3d 201, 2002-Ohio-4660,776 N.E.2d 564.
[14] Holeski v. Lawrence (1993), 85 Ohio App.3d 824, 621 N.E.2d 802.