[Cite as *Radtke v. Chester Twp.*, 2015-Ohio-4016.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| KENNETH RADTKE, JR., | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2014-G-3222** |
| CHESTER TOWNSHIP, et al., | : | |
| Defendants-Appellees. | : | |

Civil Appeal from the Geauga County Court of Common Pleas, Case No. 13 M 001076.

Judgment: Affirmed.

*David M. Lynch,* 333 Babbitt Road, Suite 333, Euclid, OH 44123 (For Plaintiff-Appellant).

*Abraham Cantor,* Johnnycake Commons, 9930 Johnnycake Ridge Road, #4-F, Concord, OH 44060 (For Defendants-Appellees Chester Township and Chester Township Board of Trustees).

*Patrick J. Krebs, Michael J. Zbiegien, Jr.,* and *William A. Doyle,* Taft, Stettinius & Hollister, L.L.P., 200 Public Square, Suite 3500, Cleveland, OH 44114-2302 (For Defendant-Appellee Western Reserve Land Conservancy).

CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, Kenneth Radke, Jr., appeals the judgment of the Geauga County Court of Common Pleas granting the motion to dismiss filed by appellees, Chester Township ("Township") and Chester Township Board of Trustees ("Trustees"), and the separate motion to dismiss filed by appellee, Western Reserve Land

Conservancy ("Conservancy"). At issue is whether a conservation easement granted by the Township to the Conservancy was the result of meetings that violated Ohio's Open Meetings Law. For the reasons that follow, we affirm.

{¶2} On November 27, 2013, appellant filed a complaint entitled, "Action To Declare Invalid A Resolution Of The Chester Township Board of Trustees In Violation Of The Open Meeting Act," against the Township, the Trustees, and the Conservancy. Appellant alleged that on December 1, 2011, the Trustees approved a resolution granting a conservation easement over a tract of land in Chester Township to the Conservancy. Appellant alleged the Trustees' grant of the easement violated Ohio's Open Meetings Act because it resulted from prior meetings, communications, and deliberations, as reflected in a series of e-mails attached to the complaint, which violated the Open Meetings Act.

{¶3} Appellant also alleged that the Conservancy organized these meetings and benefitted from them as the recipient of said conservation easement.

{¶4} Appellant sought an order invalidating the Trustees' resolution granting the conservation easement and declaring the easement to be invalid; damages in an unspecified amount; and an order directing the Conservancy to convey the easement back to the Township.

{¶5} The e-mails attached to the complaint are summarized as follows: On May 19, 2011, Brett Rodstrom, a field director for the Conservancy, wrote an e-mail to J. Meiring Borcherds, Chester Township Zoning Inspector, stating he would like to meet with the three township trustees on June 15, 2011, to discuss the proposed easement and asking Mr. Borcherds to determine their availability.

**{¶6}** Later on May 19, 2011, Mr. Borcherds sent an e-mail to the trustees advising them that Mr. Rodstrom had asked to meet with each trustee separately to discuss what the Conservancy could provide to the Township; how a conservation easement would work; and each trustee's "vision for the site." Mr. Borcherds said in the e-mail that he had already called the trustees and that each had agreed to meet with Mr. Rodstrom separately in back-to-back meetings to be held one hour apart from each other on June 15, 2011.

**{¶7}** On May 20, 2011, Trustee Clay Lawrence sent an e-mail to Zoning Inspector Borcherds in which he stated: "I want you to sit in on my session. I think your background and knowledge will be beneficial to me as I talk to Mr. Rodstrom."

**{¶8}** On July 14, 2011, Mr. Rodstrom sent an e-mail to the trustees confirming he had met with two of the trustees on June 15, 2011, but only had a telephone conversation on that date with the third trustee. He said that he had spoken "separately with each" trustee about the conservation easement and that he now had enough information to have the Conservancy's attorney prepare a first draft of a conservation easement.

**{¶9}** On August 4, 2011, Mr. Rodstrom sent another e-mail to the trustees advising them that the Conservancy would send them a draft easement for their review the following week. He also said that title work had shown a mortgage on the property and asked if the Township had ever paid the mortgage loan.

**{¶10}** Appellant alleged the three one-on-one sessions with Mr. Rodstrom and the Trustees that took place on June 15, 2011, constituted "illicit communications and meetings" in violation of the Open Meetings Act.

{¶11} The Township and the Trustees filed a joint motion to dismiss under Civ.R. 12(B)(6) for failure to state a claim and the Conservancy filed a separate motion to dismiss under that rule. In their respective motions, they argued that appellant's claim was barred as it was not filed within the applicable two-year statute of limitations.

{¶12} In its separate motion to dismiss, the Conservancy additionally argued that, according to the complaint, the one-on-one sessions with Mr. Rodstrom and each trustee did not constitute "meetings" under the Open Meetings Act and that no "deliberations" under the Act took place in those sessions. Thus, the Conservancy argued the complaint did not allege facts from which it could be inferred that the Township had violated the Open Meetings Act.

{¶13} The trial court entered judgment granting both motions to dismiss. With respect to appellees' statute-of-limitations argument, the court found it lacked merit.

{¶14} However, the court found that the complaint and the attached e-mails could not be construed to allege a violation of the Open Meetings Act because the three one-on-one sessions with Mr. Rodstrom and the individual trustees did not constitute "meetings" at which the Trustees "deliberated" public business, within the meaning of the Act. Instead, the only inference that could be drawn from the complaint and e-mails was that the sole purpose of the sessions was information-gathering. Further, the court noted that Ohio courts do not consider e-mails to be "meetings" under the Act. Thus, the trial court granted appellees' motions to dismiss.

{¶15} Appellant appeals the trial court's judgment, asserting the following for his sole assignment of error:

4

{¶16} "The Trial Court improperly granted a Motion to Dismiss, stating that three independent meetings of individual trustees pursuant to email communications does [sic] not violate the Ohio open meetings law."

{¶17} "A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 547 (1992). This court has held that an appellate court reviews a ruling on a Civ.R. 12(B)(6) motion to dismiss de novo. *Goss v. Kmart Corp.*, 11th Dist. Trumbull No. 2006-T-0117, 2007-Ohio-3200, ¶17. In construing the complaint, we must presume that all factual allegations are true and make all reasonable inferences in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988). To withstand a motion to dismiss for failure to state a claim, a plaintiff is required to allege a set of facts, which, if proven, would "plausibly" allow for recovery. *Howard v. Girard*, 11th Dist. Trumbull No. 2010-T-0096, 2011-Ohio-2331, ¶14. While the complaint does not need detailed factual allegations, it requires more than mere conclusions or a recitation of the elements of the claim. *Hoffman v. Fraser*, 11th Dist. Geauga No. 2010-G-2975, 2011-Ohio-2200, ¶21.

{¶18} Moreover, a copy of any document attached to the complaint is a part thereof for all purposes. Civ.R. 10(C). "Where documents are attached or incorporated into the complaint, the face of the complaint to be evaluated includes those documents." *Adlaka v. Giannini*, 7th Dist. Mahoning No. 05 MA 105, 2006-Ohio-4611, ¶34, citing Civ.R. 10(C); *Sonoga v. Trumbull County Child Support Enforcement Agency*, 11th Dist. Trumbull No. 2004-T-0115, 2005-Ohio-3615, ¶11. "'Material incorporated in a complaint may be considered part of the complaint for purposes of determining a Civ.R. 12(B)(6)

5

motion to dismiss.'" *Adlaka, supra,* quoting *State ex rel. Crabtree v. Franklin Cty. Bd. of Health,* 77 Ohio St.3d 247, 249, fn. 1 (1997). "If the plaintiff decides to attach documents to his complaint, which he claims establish his case, such documents can be used to his detriment to dismiss the case if they along with the complaint itself establish a failure to state a claim." *Adlaka, supra*.

{¶19} Further, this case involves the interpretation of Ohio's Open Meeting Act. Our review of the trial court's construction of statutes involves questions of law, which we review de novo. *Beaumont v. Kvaerner N. Am. Constr.*, 11th Dist. Trumbull No. 2013-T-0047, 2013-Ohio-5847, ¶8.

{¶20} R.C. 121.22, Ohio's Open Meetings Act, more popularly known as the "Sunshine Law," imposes open meeting requirements on public bodies. *Paridon v. Trumbull County Childrens Services Board*, 11th Dist. Trumbull No. 2012-T-0035, 2013-Ohio-881, ¶16. R.C. 121.22(A) requires that governmental bodies "take official action and * * * conduct all deliberations upon official business only in open meetings * * *." R.C. 121.22(C) provides: "All meetings of any public body are declared to be public meetings open to the public at all times."

{¶21} The statute defines "public body" as "any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making body of any * * * township * * * or other political subdivision * * *." R.C. 121.22(B)(1)(a). "A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body." R.C. 121.22(H).

{¶22} "The intent of the Sunshine Law is to require governmental bodies to deliberate public issues in public." *Berner v. Woods*, 9th Dist. Lorain No. 07CA009132,

6

2007-Ohio-6207, ¶15, citing *Moraine v. Montgomery Cty. Bd. of Commrs.*, 67 Ohio St.2d 139, 145 (1981). "A violation of the open-meeting requirement, or of the notice provision, is a predicate to invalidation of any legislative action. *Springfield Local Sch. Dist. Bd. of Educ. v. Ohio Ass'n of Public School Employees, Local 530*, 106 Ohio App.3d 855, 863 (9th Dist.1995).

**{¶23}** In order for the Open Meetings Act to apply, a public body must simultaneously (1) conduct a "meeting" and (2) "deliberate" concerning public business. *Berner, supra*, at ¶17, citing R.C. 121.22(B)(2); *Holeski , supra, at* 829-830.

**{¶24}** "Meeting" is defined as "any prearranged [1.] *discussion of the public business* of the public body [2.] *by a majority of its members*." (Emphasis added.) R.C. 121.22(B)(2). Thus, "[f]or there to be a 'meeting' as defined by the Sunshine Law, a majority of a public body's members must come together." *Berner, supra.* In order to "come together" for purposes of a "meeting" under the Open Meetings Act, members of the public body must appear in person to be considered present. R.C. 121.22(C). That section provides: "A member of a public body shall be present in person at a meeting open to the public to be considered present or to vote at the meeting and for purposes of determining whether a quorum is present at the meeting."

**{¶25}** Further, in order for the Open Meetings Act to apply, the public body must "deliberate" over public business at a meeting. *Berner, supra.* "'[D]eliberations' involve more than information-gathering, investigation, or fact-finding." *Berner, supra*, citing *Holeski, supra,* at 829. Information-gathering and fact-finding are essential functions of any board, but do not constitute deliberations that can serve as a basis for a violation of the Sunshine Law. *Holeski, supra.* "Deliberation" is defined as "the act of weighing and

7

examining the reasons for and against a choice or measure" or "a discussion and consideration by a number of persons of the reasons for and against a measure." Webster's Third New International Dictionary (1961) 596. "Question and answer sessions between board members and *other persons who are not public officials* do not constitute 'deliberations' unless *a majority of the board members also entertain a discussion of public business with one another.*" (Emphasis added.) *Springfield, supra,* at 864. "Discussion" of the public business is an "exchange of words, comments or ideas *by the board.*" (Emphasis sic.) *Holeski, supra, at 830*, citing *DeVere v. Miami Univ. Bd. of Trustees*, 12th Dist. Butler No. CA86-05-065, 1986 Ohio App. LEXIS 7171 (June 10, 1986). Thus, deliberation requires a member of a public body to discuss public business with another member of the same public body. *Springfield, supra; Holeski, supra.*

{¶26} Turning now to appellant's argument, the complaint alleges that the resolution granting the conservation easement was passed at the Trustees' December 1, 2011 meeting. The complaint alleges the three sessions that occurred before that meeting violated the Ohio Meetings Act, but it does not allege the December 1, 2011 meeting violated the Act. Although appellant's argument is far from clear, he appears to be arguing that the prior sessions (that were not open to the public) violated the Act and tainted the December 1, 2011 action of the board so that the board's grant of the easement as well as the prior individual sessions violated the Act.

{¶27} To the extent that appellant is arguing the e-mails themselves constitute violations of the Open Meeting Act, such argument lacks merit because Ohio courts that have addressed this issue have uniformly held e-mails do not constitute meetings for

8

purposes of the Open Meeting Act.  In *Haverkos v. N.W. Local Sch. Dist. Bd. of Educ.*, 1st Dist. Hamilton Nos. C-040578, C-040589, 2005-Ohio-3489, *discretionary appeal not allowed at* 107 Ohio St.3d 1682, 2005-Ohio-6480, one school board member sent an e-mail to two others. Three members constituted a majority of the five-member board. The First District held:

> **{¶28}** Ohio's law makes no mention of electronic communication as being subject to the law, and no Ohio case holds that it is. The statute was revised * * *, and language about electronic communication was not included in the revision. Since the legislature chose not to include electronic communication in the statute, we hold that Ohio's Sunshine Law does not cover e-mails.
>
> *Id.* at ¶9.

**{¶29}** Further, in *White v. King*, 5th Dist. Delaware No. 14 CAE 02 0010, 2014-Ohio-3896, four of five school board members exchanged several dozen e-mails among themselves concerning a response they prepared to an editorial in a local newspaper that criticized certain school board policies.  The one remaining board member that was not included in the e-mail exchanges filed suit alleging a violation of the Open Meetings Act.  The trial court granted judgment on the pleadings in favor of the four board members, and the remaining board member appealed.  The Fifth District followed *Haverkos, supra,* holding that e-mails are not included in the definition of "meeting" for purposes of the Open Meetings Act.  *Id.* at ¶26.  The Fifth District stated:  "As in *Haverkos*, we conclude that if the Generally Assembly had intended to include sporadic

9

emails in the statutory definition of 'meeting,' it would have said so. As an appellate court, we ordinarily must presume that the legislature means what it says." *Id.*

**{¶30}** Significantly, appellant does not address or even attempt to distinguish *Haverkos* or *White*.

**{¶31}** We find the reasoning of the First and Fifth Districts to be persuasive and hold the Open Meetings Act does not apply to e-mails. In any event, the e-mails at issue here do not reflect any deliberation or discussion between the trustees concerning public business. To the contrary, the e-mails were used to schedule the one-on-one sessions; to ask the zoning inspector to attend one of the sessions; to report the status of a draft easement, and to determine the status of a mortgage on the property. In short, the e-mails were used for information-gathering purposes only.

**{¶32}** The July 14, 2011 e-mail from Mr. Rodstrom to the trustees confirmed that on June 15, 2011, he met separately with two of the trustees, but only had a telephone conversation with the third trustee. In this e-mail, Mr. Rodstrom said that during each of these sessions, the participants discussed the conservation easement and that he now had sufficient information for the Conservancy's attorney to prepare a draft easement.

**{¶33}** Presuming the factual allegations of the complaint and its exhibits to be true, the three conversations that took place on June 15, 2011, which are referenced in the July 14, 2011 e-mail, could not have been "meetings" for purposes of the Open Meetings Act. This is because, even if public business was discussed by Mr. Rodstrom and the one trustee in attendance at each session, a majority of the trustees was not present at any of the sessions. Moreover, the *individual* trustee present at each session could not have "deliberated" over public business with Mr. Rodstrom within the meaning

10

of the Act because, under the Act, the discussion must be between the board's members, and Mr. Rodstrom is not a board member. R.C. 121.22(B)(2); *Springfield, supra*. Thus, none of the one-on-one sessions that allegedly occurred on June 15, 2011, could have constituted a "meeting" or resulted in "deliberations." *Id.*

**{¶34}** Further, because the individual trustees who met with Mr. Rodstrom on June 15, 2011, were not deliberating over public business, but, rather, were merely obtaining information from Mr. Rodstrom regarding the potential benefits to the Township of a conservation easement, the trustees met with him in an information-gathering capacity only. For this additional reason, none of the one-on-one sessions was required to be conducted in an open meeting. *Holeski, supra*, at 829.

**{¶35}** Apparently recognizing that none of the one-on-one sessions with Mr. Rodstrom and the individual trustees constitutes a "meeting" for purposes of the Open Meetings Act, appellant argues that the three sessions with the individual trustees on June 15, 2011, constituted a single meeting of the majority of the board for purposes of the Open Meetings Act. In support, appellant relies on *State ex rel. Cincinnati Post v. Cincinnati*, 76 Ohio St.3d 540 (1996). However, the Supreme Court's holding in that case does not apply to the instant case, and appellant's reliance on *Cincinnati Post* is thus misplaced.

**{¶36}** In *Cincinnati Post*, the Supreme Court of Ohio held that the Open Meetings Act prohibits a public body from scheduling back-to-back meetings of *less than a majority of its members* with the same topics of public business discussed at each. *Id.* at 543. The Court held that such meetings can be construed as parts of the same meeting that was attended by a majority of council members. *Id.*

11

{¶37} However, the facts in *Cincinnati Post* are immediately distinguishable from the allegations in appellant's complaint. In *Cincinnati Post*, the Cincinnati City Manager scheduled non-public, back-to-back sessions that were each attended by the city manager and *some*, but less than a majority, of the nine-member Cincinnati City Council. At each session, those present discussed among themselves the same topic – Hamilton County's proposal to build two new stadiums. In each closed-door meeting, *multiple* council members expressed opinions about the County's proposal, criticized parts of it, and expressed approval of other parts. After these sessions were conducted, a public meeting was held at which council approved an agreement between the city and the county, which was significantly different from the county's original proposal.

{¶38} In stark contrast with *Cincinnati Post*, here, the complaint, which we presume to be true, does not allege that more than one trustee ever attended any of the sessions or that there was any discussion or deliberation between township trustees at any of the sessions. Instead, the e-mails attached to the complaint show that Mr. Rodstrom met with only one member of the board at a time. The July 14, 2011 e-mail from Mr. Rodstrom to the trustees states, "[a]t this point I have spoken separately with each of you * * *." Thus, there could not have been any "meeting" or any deliberation or discussion between members of the board at any of the sessions. As a result, the three sessions, when viewed as a whole, cannot be construed to constitute a single meeting for purposes of the Open Meetings Act at which a majority of the trustees attended.

{¶39} The Ninth District in *Springfield, supra*, considered facts quite similar to those alleged in appellant's complaint. In *Springfield*, a contractor met with individual school board members in prearranged, closed meetings, held in succession, to discuss

12

a contract. In that case, the Ninth District acknowledged the distinction between a series of sessions attended by one board member and a non-board member (as in *Springfield* and the instant case) and those attended by some, but less than a majority, of the board members (as in *Cincinnati Post*). The court held that the former did not violate the Open Meetings Act, while the latter did.

{¶40} In *Springfield*, the plaintiff argued the meetings between the board's contractor and individual board members violated the Sunshine Law. In support of this argument, the plaintiff cited *State ex rel. Floyd v. Rock Hill Local School Bd. of Edn.*, 4th Dist. Lawrence No. 1862, 1988 Ohio App. LEXIS 471 (Feb. 10, 1988). In *Floyd*, the Fourth District held that one-on-one conversations between the board president (who was a board member) and the other board members violated the Sunshine Law, although a majority of board members were not present at any one session. *Id.* at *14. The Ninth District in *Springfield* said that *Floyd* presented a different scenario from the one presented in *Springfield* where each meeting was attended by only the contractor and one board member. *Id.* at 865. The Ninth District held that the presence of only one board member at the prearranged discussions with the contractor "precluded any exchange of ideas or opinions between board members." *Springfield* at 865. The Ninth District continued: "If we were to accept the [plaintiff's] contention, no public official could entertain a discussion of public business with a member of the community without complying with the requirements of the Sunshine law. We do not believe this to have been the legislature's intention." *Id.*

{¶41} We therefore hold that, presuming the factual allegations of the complaint and its exhibits to be true, no "meeting" under R.C. 121.22(B)(2) and no "deliberations"

under R.C. 121.22(A) could have taken place, and thus the trial court did not err in granting appellees' motions to dismiss.

{¶42} For the reasons stated in the opinion of this court, appellant's assignment of error lacks merit and is overruled. It is the judgment and order of this court that the judgment of the Geauga County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

_____


COLLEEN MARY O'TOOLE, J., concurs with a Concurring Opinion.

{¶43} I concur with the majority that the trial court did not err in granting appellees' Civ.R. 12(B)(6) motions to dismiss. However, I write separately regarding the narrow interpretation of R.C. 121.22, Ohio's Open Meetings Act, more popularly known as the "Sunshine Law."

{¶44} R.C. 121.22 fails to take into consideration various technological advancements, including not only e-mail, but other advancements as well, such as instant messaging, group text messaging, FaceTime, and Skype. R.C. 121.22 also fails to take into consideration the simultaneous nature of such communication. In essence, R.C. 121.22, as written, creates a conundrum. In other words, the spirit of the law is not in tune with the letter of the law. Nevertheless, Ohio's current law makes no mention of electronic communication as being subject to the law and no Ohio case holds that it is. *See Haverkos, supra*; *White, supra.*

14

{¶45} The paramount concern regarding statutory interpretation is to ascertain and give effect to the legislature's intent in enacting that statute. *See State v. S.R.*, 63 Ohio St.3d 590, 594-595 (1992). "As an appellate court, we ordinarily must presume that the legislature means what it says." *White, supra,* at ¶26. In order for the Open Meetings Act to apply, a public body must simultaneously conduct a "meeting" and "deliberate" concerning public business. *See* R.C. 121.22(A), (B)(2), and (C). "[I]f the General Assembly had intended to include sporadic emails in the statutory definition of 'meeting,' it would have said so." *White* at ¶26.

{¶46} Here, appellant's complaint indicates that the resolution granting the conservation easement was passed at the Trustees' December 1, 2011 meeting. The complaint alleges that three sessions that occurred before that meeting (as reflected in a series of emails) violated the Ohio Meetings Act, which thereby tainted the December 1, 2011 action of the board.

{¶47} As the majority correctly points out, the emails at issue were used to schedule the one-on-one sessions, to ask the zoning inspector to attend one of those sessions, to report the status of a draft easement, and to determine the status of a mortgage on the property. The emails do not reflect any deliberation or discussion between the trustees concerning public business. Rather, the emails were merely used for information-gathering purposes only.

{¶48} Regarding electronic communication, although the spirit of the law is not in tune with the letter of the law in this 21st century in which we live, the trial court committed no error in this case. Presuming the factual allegations of the complaint and its exhibits to be true, no "meeting" and no "deliberations" took place. *See* R.C.

15

121.22(A), (B)(2), and (C). Accordingly, because the trial court properly granted appellees' motions to dismiss, based on the facts presented, I concur with the majority to affirm.