THE STATE, EX REL. THE FAIRFIELD LEADER, *v.* RICKETTS, MAYOR, ET AL.

[Cite as State, ex rel. The Fairfield Leader, *v.* Ricketts (1990), 56 Ohio St. 3d 97.]

(No. 89-550—Submitted August 29, 1990—Decided December 19, 1990.)

*Baker & Hostetler, David L. Marburger* and *Jane S. Arata,* for relator.

*Don S. McAuliffe,* law director, for respondents Rita Ricketts et al.

*David L. Landefeld,* prosecuting attorney, and *Roy E. Hart,* for respondents Lori Marinacci et al.

*Paul D. Morehart,* for respondents Lyle E. Diley et al.

*Vorys, Sater, Seymour & Pease, C. William O'Neill* and *Robert N. Webner,* urging allowance for *amici curiae,* The Plain Dealer Publishing Co. et al.

*Anthony J. Celebrezze, Jr.,* attorney general, *Simon B. Karas, Shawn H. Nau* and *Kirk T. Albrecht,* urging allowance for *amicus curiae,* Attorney General of Ohio.

*Per Curiam.* This case presents three questions for our review. First, we must decide if respondents have a clear legal duty to prepare and make available for public inspection minutes of the January 28 meeting. Second, we must decide if a writ of mandamus is appropriate to compel these acts. Third, we must decide if The Leader is entitled to attorney fees. For the reasons that follow, we answer all these questions affirmatively. We therefore allow the writ and reasonable attorney fees.

I

*The Pickerington Respondents' Duties*

The village of Pickerington is a chartered municipality exercising

home rule powers under Sections 3 and 7, Article XVIII, Ohio Constitution. Thus, the Pickerington respondents must act in accordance with their charter, their administrative code, and the general laws of Ohio that are not inconsistent with the charter. Section 1.02 of the Pickerington Charter. The Leader argues that the local laws of Pickerington require the Pickerington respondents to prepare minutes of the meeting at issue and that R.C. 149.43(B) requires them to provide public access to the minutes they prepare. We agree.

The first act that the Leader seeks to compel is clearly mandated by Sections 121.04(d)(2)(B) and (3) of the Pickerington Adm. Code. These sections establish a duty to prepare minutes of "all Council meetings," even those from which the municipal clerk is excused by the council pursuant to Section 4.09 of the charter.[1] The term "meeting" is defined only by Section 121.03 of the Pickerington Adm. Code, and it states that a "meeting" is "any prearranged discussion of the public business of any public body by a majority of its members." The January 28 meeting was prearranged, it facilitated discussions about development in and around Pickerington, and it was attended by a majority of the council. Thus, a duty to prepare minutes of that meeting exists.

The Pickerington respondents do not deny the duty set forth in the Pickerington Administrative Code. They instead cite Section 2.03 of the Pickerington Charter, which provides, *inter alia*, that "[a]ll regular and special meetings of Council shall be open to the public, excepting those covered by Section 121.22 of the general laws of the State of Ohio." From this, the Pickerington respondents argue that the January 28 meeting was something other than a regular or special council meeting and, therefore, that it could be held in private. They also argue that the charter exception for meetings "covered by" R.C. 121.22 allowed the instant meeting to be closed to the public.

Both of these arguments miss the mark. The Leader's complaint seeks to inspect minutes of the January 28 meeting, not to attend that meeting or to invalidate any subsequent council action. Cf. *State, ex rel. Craft,* v. *Schisler* (1988), 40 Ohio St. 3d 149, 532 N.E. 2d 719, and *Fox* v. *Lakewood* (1988), 39 Ohio St. 3d 19, 528 N.E. 2d 1254. Thus, whether the meeting should have been held open to the public does not directly concern us.

Beyond this, however, we fail to see how the charter allows any meeting of council that is not either regular or special. Section 2.03 of the Pickerington Charter also provides that the council "shall meet at such times as set by its rules, but not less than once a month" and that "[s]pecial meetings may be called by the mayor or three (3) members of Council." Under Section 121.02 of the Pickerington Administrative Code, "regular" meetings are held on the first and third Tuesdays of each month, unless such day is a national holiday or unless an exception is approved by a majority of council. "Special" meetings may be held on other days if council members are given twenty-four hours' notice.

---

[1] Section 121.04(d)(2)(B) provides that the Pickerington Clerk "shall * * * [p]repare minutes which are a record of proceedings of all Council meetings and be custodian of such records."

Section 121.04(d)(3) provides that if the clerk is absent from a council meeting, "[c]ouncil is required to elect one of its members to perform the duties of the Clerk and such member shall sign the minutes which he has taken."

To us, the "regular" and "special" meetings described in the Pickerington Charter and Administrative Code require the conclusion that these terms are mutually exclusive. The council either meets in a regular session or it does not, and any session that is not regular is special. Thus, we agree with The Leader's argument that regular and special meetings are the only alternatives under the charter for a majority of the council to assemble to discuss public business, and we reject the theory that the January 28 meeting was neither of these. Indeed, like the unannounced council meeting with the mayor in *State, ex rel. Plain Dealer Publishing Co., v. Barnes* (1988), 38 Ohio St. 3d 165, 167, 527 N.E. 2d 807, 810, the January 28 meeting here was within the ambit of the special meeting category of the Pickerington Charter.

Further, we reject the argument that the exception for any meeting "covered by" R.C. 121.22 encompassses the January 28 meeting. The statute declares that all meetings of any public body are to be open to the public at all times, R.C. 121.22(C), but it also permits closed executive sessions about specified topics during a regular or special meeting of the public body. R.C. 121.22(G).[2] R.C. 121.22, therefore, "covers" regular and special meetings, just as Section 2.03 of the Pickerington Charter does. Thus, if we read the charter exception literally, as the Pickerington respondents suggest, the exception would swallow the charter rule that all regular and special meetings be held open to the public.

To prevent this incongruous result and to apply the charter exception as the council has done in the past, we read the exception to incorporate at least the R.C. 121.22(G) exceptions to the open-meetings rule in that statute. Thus, we hold that the Pickerington Charter exception permits executive sessions in the same manner and for the same reasons as does R.C. 121.22 (G). In doing so, we reconcile the charter with the portion of Section 121.03 of the Pickerington Administrative Code that reads:

"However, this section [regarding

---

[2] R.C. 121.22(G) provides, in part:

"The members of a public body may hold an executive session only after a majority of a quorum of the public body determines, by a roll call vote, to hold such a session and only at a regular or special meeting for the sole purpose of the consideration of any of the following matters:

"(1) To consider the appointment, employment, dismissal, discipline, promotion, demotion, or compensation of a public employee or official, or the investigation of charges or complaints against a public employee, official, licensee, or regulated individual, unless the public employee, official, licensee, or regulated individual requests a public hearing. * * *

"(2) To consider the purchase of property for public purposes, or for the sale of property at competitive bidding, if premature disclosure of information would give an unfair competitive or bargaining advantage to a person whose personal, private interest is adverse to the general public interest. * * *

"* * *

"(3) Conferences with an attorney for the public body concerning disputes involving the public body that are the subject of pending or imminent court action;

"(4) Preparing for, conducting, or reviewing negotiations or bargaining sessions with public employees concerning their compensation or other terms and conditions of their employment;

"(5) Matters required to be kept confidential by federal law or rules or state statutes;

"(6) Specialized details of security arrangements where disclosure of the matters discussed might reveal information that could be used for the purpose of committing, or avoiding prosecution for, a violation of the law. * * *""

open meetings and notice to the public and news media] shall not apply to an executive session held at a regular or special meeting of any public body which is conducted for the purpose of considering any of the matters set forth in Ohio R.C. 121.22(G) * * *."

Accordingly, if the January 28 meeting had been an executive session authorized by R.C. 121.22(G), the Pickerington respondents might have excluded the public and press lawfully under the charter. None of the topics for which executive sessions are permitted by R.C. 121.22(G), however, was discussed during that meeting. Thus, the charter exception did not apply, and the January 28 meeting remained subject to the charter requirement that all regular and special council meetings be held open to the public.

Based on the foregoing, we hold that the Pickerington respondents have a clear legal duty under their charter and administrative code to prepare minutes of the January 28 meeting. We further hold that this duty exists notwithstanding the charter exception on which Pickerington respondents rely. In light of these holdings, we do not reach The Leader's argument that R.C. 121.22 (C) also requires these respondents to prepare the minutes in dispute.

Having determined that the Pickerington respondents must prepare the minutes The Leader seeks, the public access issue is easily resolved. R.C. 149.43(B) states in relevant part that "[a]ll public records shall be promptly prepared and made available for inspection to any person at all reasonable times during regular business hours." Once prepared, minutes of the January 28 meeting will be public records because they will document activities of the Pickerington Council, R.C. 149.011(G), and will be "kept by [a] public office." R.C. 149.43(A)(1).

The Pickerington respondents cite no local law that conflicts with this statute. Thus, we hold that the Pickerington respondents also have a duty to make minutes of the January 28 meeting available for public inspection.

### The Fairfield County and Violet Township Respondents' Duties

The Leader argues that R.C. 305.10, "504.04 [sic, 507.04]," and 121.22(C) require the county and township respondents to prepare minutes of the January 28 meeting. R.C. 305.10 requires the clerk of the board of county commissioners to "keep a full record of the proceedings of the board * * *." R.C. 507.04 requires the township clerk to "keep an accurate record of the proceedings of the board of township trustees at all its meetings * * *." In addition to the public-meeting requirement discussed previously, R.C. 121.22(C) provides that "[t]he minutes of a regular or special meeting of any such public body shall be promptly recorded and open to public inspection."

The county and township respondents do not dispute their respective clerks' general obligation to record minutes under these statutes. However, since they attended the January 28 meeting only on the Pickerington mayor's invitation, these respondents submit that the Pickerington respondents should be held solely responsible for any duty to prepare minutes. We disagree.

The county and township respondents' argument implicitly focuses on the phrases "of the board" and "of any such public body" in R.C. 305.10, 507.04, and 121.22. The argument construes these phrases to mean that the county and township respondents need not prepare minutes of any meeting that they did not initiate. However, at least insofar as the application of R.C.

121.22(C) is concerned, we consider the county and township respondents' approach too restrictive.

R.C. 121.22(A) directs us to construe that statute liberally in favor of public disclosure. Thus, in our view, "of" is used in R.C. 121.22(C) to mean more than just meetings authorized by a public body; it also refers to any meeting that the public body causes to take place. R.C. 121.22(B)(2), like the Pickerington Administrative Code, defines "meeting" as "any prearranged discussion of the public business of the public body by a majority of its members." Accordingly, we hold that where, as here, the members of a public body agree to attend, in their official capacity, a meeting where public business is to be discussed and a majority of the members do attend, R.C. 121.22(C) necessitates that minutes of the meeting be recorded.

Having determined that the Fairfield County and Violet Township respondents must prepare minutes of the January 28 meeting, we consider again the question of public access. As mentioned above, R.C. 149.43(B) requires that minutes of a public meeting be promptly prepared and made available for public inspection. By declaring the minutes of public meetings open to inspection, R.C. 121.22(C) restates this obligation. Thus, these respondents also have a duty to make the minutes they prepare available for public review.

II

For a writ of mandamus to issue, The Leader must demonstrate that it is entitled to respondents' performance of a clear legal duty and that it has no plain and adequate remedy in the ordinary course of law. *State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141, 40 O.O. 2d 141, 228 N.E. 2d 631, paragraph ten of the syllabus. For the reasons just discussed, we conclude that The Leader has satisfied the first part of this test. Thus, we turn to the argument that The Leader has an adequate remedy at law.

The only specific authority cited by respondents on this issue is R.C. 121.22(I), which affords injunctive relief to enforce the provisions of the statute. This remedy, however, contemplates an order compelling certain acts and, thus, is in the nature of a mandatory injunction. We have said that the availability of a mandatory injunction will not prevent the issuance of a writ of mandamus. *Pressley, supra,* at 152-159, 40 O.O. 2d at 148-152, 228 N.E. 2d at 641-646; *State, ex rel. Fenske,* v. *McGovern* (1984), 11 Ohio St. 3d 129, 11 OBR 426, 464 N.E. 2d 525. Thus, with respect to the Fairfield County and Violet Township respondents, we are not persuaded by R.C. 121.22(I) to deny The Leader relief.

With respect to the Pickerington respondents, their duties to prepare and make available minutes initially emanate from the local laws of Pickerington and R.C. 149.43, not R.C. 121.22. In a comparable situation, *State, ex rel. Plain Dealer Publishing Co.,* v. *Barnes, supra,* at 169, 527 N.E. 2d at 811, we allowed a writ of mandamus to enforce a charter provision mandating open meetings and held that the relator had no plain and adequate remedy at law by way of a mandatory injunction, citing *Pressley* and *Fenske. Barnes* did not specifically mention R.C. 121.22(I). However, we find our application of *Pressley* and *Fenske* in that case a sufficient basis for holding that R.C. 121.22(I) similarly provides The Leader no adequate alternative to the writ.

In addition to their reliance on R.C. 121.22(I), the Pickerington respondents raise several other argu-

ments that collaterally challenge The Leader's claim for a writ of mandamus. Specifically, they propose that the instant case is moot because the January 28 meeting is over and because they have already provided minutes of that meeting by virtue of the mayor's press release. The Pickerington respondents also argue that by not naming the village of Pickerington in its complaint, The Leader has failed to join a party necessary for the village to comply with our decision.

None of these arguments has merit. First, the Leader has not sought to gain access to the January 28 meeting, so the end of the meeting has no bearing on the newspaper's cause of action. Second, we have reviewed excerpts from minutes taken by the Pickerington respondents and the excerpts typically describe meeting events in great detail. A general press release is no substitute for this information. Third, the Pickerington officials directly and indirectly responsible for preparing minutes of meetings have been named respondents in this case, and we see no reason why they could not produce minutes per our order. Moreover, we note that The Leader has moved to join the village of Pickerington, Fairfield County and Violet Township and that these respondents did not oppose its motion. We grant this motion, and thereby resolve the Pickerington respondents' collateral challenge.

Accordingly, we hold that The Leader has no adequate remedy in the ordinary course of law and that none of the Pickerington respondents' other arguments justifies the denial of a writ of mandamus. The Leader, therefore, is entitled to the writ requested in its complaint.

## III

We now consider The Leader's request, made pursuant to R.C. 149.43 (C), for attorney fees from the Pickerington respondents. An attorney fee award under R.C. 149.43(C) is discretionary and is to be determined by the presence of a public benefit conferred by the relator seeking disclosure. *State, ex rel. Multimedia, Inc.,* v. *Whalen* (1990), 51 Ohio St. 3d 99, 554 N.E. 2d 1321. Reasonableness and good faith of the respondent in refusing to make the disclosure are also to be considered. *State, ex rel. Beacon Journal Publishing Co.,* v. *Ohio Dept. of Health* (1990), 51 Ohio St. 3d 1, 553 N.E. 2d 1345.

In this case, as it was in *Multimedia, supra,* at 100, 554 N.E. 2d at 1322, public benefit is manifest. The Leader brought this action to enforce its readers' right to know about annexation and planning developments in the Pickerington area.

The Leader argues that unreasonableness and bad faith are also present because (1) Mayor Ricketts intended from the beginning to prevent all public access to the annexation discussions of January 28, (2) she set up the meeting in an effort to avoid laws requiring public access to both the meeting and minutes documenting it, and (3) the village council acquiesced in these machinations. Further, The Leader points to the actions of Donald S. McAuliffe, who reserved the name, "The Fairfield Leader," for his use with the Secretary of State and filed articles of incorporation for that entity after The Leader filed this action. McAuliffe created this corporation, at least in part, because he believed that it would interfere with the newspaper's standing to sue his client.

The record before us substantiates that the January 28 meeting was arranged and conducted with an aim to circumvent Pickerington and state laws requiring public access to and

minutes of that meeting. Moreover, we have ascribed little or no weight to the Pickerington respondents' reasons for not providing the minutes at issue, and we view their reasons as contrived attempts to justify an untenable position. We therefore attribute bad faith to the Pickerington respondents and further find that they unreasonably refused to comply with The Leader's request for the pertinent minutes.

On the other hand, we do not consider McAuliffe's actions a basis for awarding attorney fees. In awarding fees, we are to focus on respondents' reasons for not disclosing public records. *Multimedia, supra,* at 100, 554 N.E. 2d at 1322; *Beacon Journal, supra,* at 4, 553 N.E. 2d at 1347; *State, ex rel. Fox,* v. *Cuyahoga Cty. Hosp. System* (1988), 39 Ohio St. 3d 108, 112, 529 N.E. 2d 443, 447. McAuliffe, however, reserved the newspaper's name and set up his corporation after the Pickerington respondents decided not to prepare and allow public inspection of minutes of the January 28 meeting. Thus, while McAuliffe's actions were certainly questionable, we are not inclined to award attorney fees due to an overzealous defense strategy.

Accordingly, we hold that The Leader is entitled to reasonable attorney fees from the Pickerington respondents. We note, however, that The Leader has not yet specifically applied for attorney fees or submitted evidence in support of that award. Therefore, within thirty days after the date of this order, The Leader may file its application and evidence for attorney fees, together with a memorandum in support. Within thirty days after The Leader's application is filed, the Pickerington respondents may file their evidence and a memorandum opposing the reasonableness of the fees requested.

*Writ allowed.*

MOYER, C.J., SWEENEY and RESNICK, JJ., concur.

WRIGHT, J., concurs in Parts I and II, but concurs in judgment only in Part III.

DOUGLAS, J., concurs in part and dissents in part.

HOLMES and H. BROWN, JJ., not participating.

DOUGLAS, J., concurring in part and dissenting in part. I concur in the well-reasoned opinion and judgment of the majority, but dissent from the reasoning found in Part III of the opinion regarding the allowance of attorney fees. Once again, the majority writes into R.C. 149.43(C) that which is not there. There is no "public benefit," "reasonableness" and/or "good faith" requirement found in R.C. 149.43(C) as a condition precedent to the entitlement of attorney fees. The fallacy of the artificial tests promulgated by the majority appears in its discussion in Part III of the opinion.

The majority says that "[i]n this case * * * public benefit is manifest. The Leader brought this action to enforce its readers' right to know about annexation and planning developments in the Pickerington area." It can be easily seen how malleable and subjective this test really is. If four or more justices of this court decide that in any given case a "public benefit is manifest," then attorney fees will be ordered. But, is there ever a case where the release of the public's own records to the public does not bestow a manifest public benefit? Given the law passed by the General Assembly, I think not!

Likewise, the good faith-bad faith test is ductile. The majority says that "* * * [w]e therefore attribute bad

faith to the Pickerington respondents * * *.'' Therefore, says the majority, "* * * we view their [respondents'] reasons as contrived attempts to justify an untenable position. * * *" What was this bad-faith-untenable position of respondents? Simply, that they thought they had a right to meet privately, away from their designated offices, without preparing minutes of their informal meeting. This hardly seems to be the contrived, clandestine conclave ascribed to them by the ma-

jority. Thus, should the award of attorney fees be premised upon when four or more of us feel like there was "bad faith" or a lack of "good faith" on the part of the losing respondents in a public records disclosure action? I think not.

I submit that the better procedure is to follow the statute as it has been given to us by the General Assembly. Until we do so, the attorney-fees issue will continue to be decided in each case on an ad hoc basis.