[Cite as *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.,* 128 Ohio St.3d 256, 2011-Ohio-625.]

THE STATE EX REL. AMERICAN CIVIL LIBERTIES UNION OF OHIO, INC. *v.* CUYAHOGA COUNTY BOARD OF COMMISSIONERS ET AL.

[Cite as *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.,* 128 Ohio St.3d 256, 2011-Ohio-625.]

*Public records — Open meetings — Duty of private entities — Definitions of "public body," R.C. 121.22, and "public office," R.C. 149.011 — Functional equivalence — Quasi-agency — Prior request for public records.*

(No. 2010-0728 — Submitted January 4, 2011 — Decided February 16, 2011.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is an action for a writ of mandamus to compel respondents, the Cuyahoga County Board of Commissioners and the individual commissioners, the Cuyahoga County Transition Advisory Group ("TAG") and its members, and the Transition Executive Committee ("TEC") and its members, to provide access to the records and meeting minutes of TEC and its workgroups pursuant to Ohio's Sunshine Laws, R.C. 121.22 and 149.43. Because relator, American Civil Liberties Union of Ohio, Inc. ("ACLU"), has not established its entitlement to the requested extraordinary relief, we deny the writ.

**Facts**

{¶ 2} In November 2009, Cuyahoga County voters adopted a county charter that replaces the county's three-member board of commissioners with an elected county executive and council, changes several county offices from elected to appointed positions, and reorganizes or eliminates certain departments. The

charter became effective in January 2010, with the new county government effective in January 2011.

{¶ 3} Under Section 13.07 of the Cuyahoga County Charter, the board of county commissioners created TAG, which had a duty to develop recommendations for the transition to the new county government:

{¶ 4} "The Board of County Commissioners, not later than March 2010, shall designate three senior administrative officials of the County to act as a Transition Advisory Group, which shall develop recommendations for the orderly and efficient transition to the operation of the County government under the provisions of this Charter and shall work with the newly elected County officials. The Board of County Commissioners shall provide necessary facilities and support for the Transition Advisory Group and shall make provision in the budget of the County for the salaries of the elected officers who are to take office in January 2011 and for such other matters as shall be necessary and practicable to provide for the transition. All County officials and employees shall cooperate with the Transition Advisory Group by providing such information and documents as the Transition Advisory Group shall request in connection with the performance of its duties under this section and shall use their best efforts to assist the newly elected County officials and their designees and representatives in implementing the transition."

{¶ 5} Pursuant to this section of the charter, on November 19, 2009, the Cuyahoga County Board of Commissioners designated James McCafferty, the county administrator, Gary Holland, the director of the county Department of Justice Affairs, and Joseph Nanni, the county director of human resources, to act as the TAG.

{¶ 6} At a Gund Foundation dinner in early December 2009, both McCafferty and Martin Zanotti, the chairperson of New Cuyahoga Now ("NCN"), a private entity that had drafted the new charter and guided the campaign for its

passage, spoke about county-transition issues. Following discussion between McCafferty and Zanotti, TAG invited NCN and the Greater Cleveland Partnership[1] ("GCP") to form a comprehensive civic coalition that would represent and work with all sectors of the community during the transition period and beyond.

{¶ 7} NCN and GCP accepted the invitation and created a steering committee, the TEC, to oversee the creation of workgroups as part of the committee. TEC has eight members, including its cochairpersons, McCafferty and Zanotti. The workgroups comprise community leaders, county employees, and private citizens who volunteered to participate in the transition based on their expertise and interest in the specific subject-matter areas of the workgroups. Thirteen workgroups were ultimately created: Public Engagement Committee, County Government Collaboration Committee, Code of Ethics Workgroup, Finance & Administration Workgroup, Justice Services Workgroup, Human Services Workgroup, Human Resources Workgroup, Human Capital/Quality Places Workgroup, Information Technology Workgroup, Procurement & Public Works Workgroup, Economic Development Workgroup, County Council Planning Workgroup, and Boards & Commissions Workgroup.

{¶ 8} Under the general transition structure, TEC was to review and approve recommendations offered by the workgroups and forward approved recommendations to TAG for review, approval, and submission to the newly elected county executive and council by November 2010. But TAG is free to disregard any recommendations made by TEC or the workgroups, and TEC and the workgroups retain their independent right to present recommendations directly to the county executive and council notwithstanding TAG's disapproval.

---

[1] The Greater Cleveland Partnership "is a membership association of Northeast Ohio companies and organizations and one of the largest metropolitan chambers of commerce in the nation." http://www.gcpartnership.com/About-GCP.aspx.

{¶ 9} Neither the commissioners nor TAG created TEC or the workgroups, and TAG did not delegate any of its charter-mandated duties to TEC or the workgroups. TEC receives no guidance or direction from TAG, and although county employees serve on TEC and various workgroups, they have no official authority to direct or make decisions on behalf of TEC or any workgroup.

{¶ 10} TAG has received $7,000,000 in funding from the county, but none of that money has been allocated to TEC or the workgroups. The only operational assistance provided by the board of commissioners and TAG to TEC and the workgroups was posting information about TAG, TEC, and the workgroups on the county website for the transition and providing meeting space for some of the workgroups. NCN has received money entirely from private sources to support its efforts. In essence, TEC and the workgroups are independent of any government entity or process.

{¶ 11} On February 11, 2010, shortly after media reports that McCafferty and Zanotti had stated that transition workgroups should be able to conduct business in private, TAG issued a press release entitled "Transition Advisory Group Committed to Open Meetings," in which it "reaffirmed the importance of transparency and openness to the formation of a new county government by opening all work group meetings to the public." As announced in the release, "[m]inutes of the Transition Work Groups and scheduled meeting dates, times and locations will also be posted on the Cuyahoga County Website."

{¶ 12} Consistent with the press release, information about meetings of TAG, TEC, and any committees, subcommittees, or workgroups assembled under TEC, including the dates, times, locations, and minutes of the meetings, has been made available to the public through regular postings on the county's transition website, http://charter.cuyahogacounty.us/en-US/home.aspx. For example, the meeting dates, locations, agendas, and minutes for all of TEC's meetings have been posted on the website, and the meetings have been open to the public.

**{¶ 13}** By letter dated February 17, 2010, relator, American Civil Liberties Union of Ohio, Inc. ("ACLU"), submitted a request addressed to the Cuyahoga County Board of Commissioners and County Administrator McCafferty pursuant to R.C. 149.43 and Section 12.06 of the Cuyahoga County Charter for certain records relating to the transition to the new county government, including (1) "[r]ecords of whether any members of the Transition Advisory Group ('TAG'), its committees, subcommittees, or workgroups have completed the public records training that is required for elected officials and their designees pursuant to Revised Code Section 109.43," (2) "policies or procedures (official or unofficial) used in the formation of any committees, subcommittees, or workgroups established by or under the TAG," (3) a "list of the names of each individual/volunteer who is serving or has served on a committee, subcommittee, or workgroup under the TAG," (4) "[f]ull copies of minutes to all TAG or subcommittee meetings that have already been held," and (5) "[f]ull copies of any documents or reports created by TAG or any of its subcommittees."

**{¶ 14}** A couple of weeks later, the county prosecutor's office submitted a response to the ACLU's records request on behalf of the board and McCafferty. In the response, the county specified that for the second, fourth, and fifth categories of requested records, it would provide access to records of TAG, which it conceded was a public body for purposes of the Sunshine Laws, but it could not provide access to the records of TEC and the various transition workgroups because, inter alia, TAG did not create the workgroups, and the workgroups were "private, unincorporated associations" rather than "public bodies." The county stated, "[N]either the [board of county commissioners] nor Mr. McCafferty can respond * * * to those portions of your letter that are not directed to TAG, but are instead directed to those various voluntary associations formed by interested members of the public to provide community input to the TAG."

**{¶ 15}** Further, the county noted that it had no records for the first category of requested records—public-records training for TAG members—because they were not elected officials or their designees subject to R.C. 109.43. As to the third category of requested records—lists of persons serving on transition committees, subcommittees, or workgroups—the county stated that although it did not believe they were public records, it would nevertheless submit the lists to the ACLU. The county provided access to copies of about 7,000 pages of responsive documents to the ACLU. The county's response included all known nonprivileged, responsive public records of the board and TAG but did not include any records of TEC or its workgroups, which the board and TAG did not have. On March 8, the ACLU retrieved the records provided by the county.

**{¶ 16}** About a month and a half later, on April 27, the ACLU filed this action for a writ of mandamus to compel respondents, the board of commissioners and its members, TAG and its members, and TEC and its members, to provide it with access to the "public records and meeting minutes of the various county government transition committees and workgroups established by the County to fulfill its responsibilities under Section 13.07 of the new Cuyahoga County Charter." The ACLU requested "a peremptory writ of mandamus directing the Respondents to make the requested records available for inspection and copying without further delay" and "a peremptory writ of mandamus directing the Respondents to prepare, file, and maintain full and accurate minutes and to conduct all meetings in public." The board, TAG, and their members filed a motion to dismiss, and TEC and its members filed an answer and a motion for judgment on the pleadings. The ACLU filed a motion for leave to file an amended complaint and a motion to strike the affidavit in the answer. The ACLU's amended complaint requested the same relief as its initial complaint.

**{¶ 17}** On August 25, 2010, we granted the ACLU's motion for leave to file an amended complaint, denied the motions for judgment on the pleadings, to dismiss, and to strike, and granted an alternative writ. 126 Ohio St.3d 1541, 2010-Ohio-3855, 932 N.E.2d 337. The parties have submitted evidence and briefs.

**{¶ 18}** This cause is now before the court for our consideration of the merits. In addition, the ACLU has filed a motion for leave to exceed the page limit for its reply brief, and respondents TEC and its members have filed a motion to strike certain newspaper articles relied upon by the ACLU in its merit brief.

### Legal Analysis

#### *Motion for Leave to Exceed Page Limit*

**{¶ 19}** S.Ct.Prac.R. 6.4(B) provides, "Except in death penalty appeals of right, the reply brief shall not exceed twenty numbered pages, exclusive of the table of contents, the table of authorities cited, the certificate of service, and any appendix." Excluding the table of contents, table of authorities, and the certificate of service, the ACLU's reply brief exceeds the 20-page limit by six pages.

**{¶ 20}** We have previously granted motions to extend the page limits for briefs. E.g., *Cope v. Metro. Life Ins. Co.* (1997), 80 Ohio St.3d 1402, 684 N.E.2d 335.

**{¶ 21}** We exercise our discretion here and grant the ACLU's motion. As the ACLU notes, it is responding to two sets of respondents' briefs, which were 35 and 36 pages long, and one of those briefs included a constitutional argument. Under these circumstances, allowing the ACLU to exceed the 20-page limit by a few pages is warranted.

#### *Mandamus*

**{¶ 22}** The ACLU requests a writ of mandamus to compel respondents to prepare, file, and maintain full and accurate minutes of meetings of TEC and its transition workgroups, conduct all of these meetings in public, and provide access

to their public records and meeting minutes.  To be entitled to the writ, the ACLU must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of respondents, and the lack of an adequate remedy in the ordinary course of the law.  *State ex rel. Brown v. Lemmerman*, 124 Ohio St.3d 296, 2010-Ohio-137, 921 N.E.2d 1049, ¶ 9.

*Lack of Adequate Remedy in the Ordinary Course of Law*

{¶ 23} Mandamus will not issue if the relator has an adequate remedy in the ordinary course of law.  R.C. 2731.05.

{¶ 24} The ACLU bases its entitlement to the requested extraordinary relief on R.C. 121.22 and 149.43.  "Ohio's 'Sunshine Laws' govern public records and open meetings."  *Dream Fields, L.L.C. v. Bogart*, 175 Ohio App.3d 165, 2008-Ohio-152, 885 N.E.2d 978, ¶ 3.  For the ACLU's public-records mandamus claim, "[m]andamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act."  *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6.  Relators in public-records mandamus cases need not establish the lack of an adequate remedy in the ordinary course of law. *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 41.

{¶ 25} For the ACLU's open-meetings mandamus claim, notwithstanding the county respondents' contentions to the contrary, the claim is not an ill-disguised claim for a declaratory judgment and prohibitory injunction, and neither a declaratory judgment nor a prohibitory injunction would constitute an adequate remedy in the ordinary course of law.  A declaratory judgment would not be an adequate remedy without a mandatory injunction ordering respondents to prepare, file, and maintain full and accurate meeting minutes of past closed meetings of TEC and its workgroups and to compel them to conduct all TEC and workgroup meetings in public.  A mandatory injunction, however, is an extraordinary remedy

that does not preclude a writ of mandamus. See *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 28. Similarly, R.C. 121.22(I), which affords mandatory injunctive relief by way of a common pleas court action to enforce the provisions of the Open Meetings Act, does not prevent a mandamus action. See *State ex rel. Fairfield Leader v. Ricketts* (1990), 56 Ohio St.3d 97, 102, 564 N.E.2d 486. And a prohibitory injunction would not provide the ACLU with the relief it requests: an order to *compel* respondents to comply with R.C. 121.22 by preparing, filing, and maintaining full and accurate meeting minutes and to hold all of the TEC and workgroup meetings in public. *Ohio Liberty Council* at ¶ 28.

{¶ 26} Therefore, the ACLU's amended complaint properly invokes our original jurisdiction, and a common pleas court action for a declaratory judgment and either a mandatory or a prohibitory injunction would not provide an adequate remedy in the ordinary course of law so as to preclude its mandamus claims.

*Clear Legal Right and Clear Legal Duty: Prospective Mandamus Relief*

{¶ 27} In its amended complaint, the ACLU has requested "a peremptory writ of mandamus directing the Respondents to prepare, file, and maintain full and accurate minutes and to conduct all meetings in public." Insofar as the ACLU's request for relief could be construed as requesting a writ of mandamus to compel compliance with R.C. 121.22 by respondents in the future, they are not entitled to this relief. A "writ of mandamus will not issue to compel the general observance of laws in the future." *State ex rel. Kirk v. Burcham* (1998), 82 Ohio St.3d 407, 409, 696 N.E.2d 582.

{¶ 28} Moreover, the evidence establishes that TEC and the transition workgroups are complying with R.C. 121.22 by conducting open meetings and preparing and providing minutes of the meetings. "Mandamus will not compel the performance of an act that has already been performed." *State ex rel. Dehler v. Kelly*, 123 Ohio St.3d 297, 2009-Ohio-5259, 915 N.E.2d 1223, ¶ 1.

**{¶ 29}** For the ACLU's claim for copies of minutes of past TEC and workgroup meetings that were closed to the public, the Open Meetings Act, "R.C. 121.22, requires the preparation, filing, and maintenance of a public body's minutes. * * * Once these minutes are prepared, Ohio's Public Records Act, R.C. 149.43, requires the public body to permit public access to the minutes upon request." *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 27.

**{¶ 30}** Nevertheless, the ACLU's evidence that TEC and the workgroups held private meetings in the past is based on a solitary February 10, 2010 Cleveland Scene newspaper article in which it was reported that McCafferty said that "committees have already started working behind closed doors." By contrast, respondents' evidence is supported by affidavits establishing that TEC meetings have been open to the public and that information, including meeting minutes, for TEC and the workgroups, has been made available to the public through regular postings on the county's website. The single newspaper article does not satisfy the ACLU's burden to establish its entitlement to the preparation and provision of the requested minutes. See *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979, ¶ 59 (court need not consider two newspaper articles as evidence in mandamus case); *State ex rel. Miller v. Cuyahoga Cty. Bd. of Elections*, 103 Ohio St.3d 477, 2004-Ohio-5532, 817 N.E.2d 1, ¶ 15, quoting *State ex rel. Flagner v. Arko* (Feb. 5, 1998), Cuyahoga App. Nos. 72779 and 87263, 1998 WL 45342, *3, quoting *Heyman v. Bellevue* (1951), 91 Ohio App. 321, 326, 48 O.O. 404, 108 N.E.2d 161 ("newspaper article 'cannot be accepted as [summary-judgment] evidence; it is "hearsay of the remotest character" ' "); *State ex rel. Boccuzzi v. Cuyahoga Cty. Bd. of Commrs.*, 112 Ohio St.3d 438, 2007-Ohio-323, 860 N.E.2d 749, ¶ 20 (newspaper article rejected as evidence in mandamus case). This conclusion renders moot respondents TEC and its

members' motion to strike this and another newspaper article from the ACLU's evidence.

{¶ 31} Therefore, the ACLU has established neither a clear legal right to a writ of mandamus directing respondents to prepare, file, and maintain full and accurate minutes and to conduct all meetings in public nor a corresponding clear legal duty on the part of respondents to do so.

*Clear Legal Right and Clear Legal Duty: Public-Records Claim*

{¶ 32} The ACLU also claims entitlement to a writ of mandamus to compel respondents to provide access to the public records of TEC and the transition workgroups.

*Prior Request for Records*

{¶ 33} The respondents initially assert that the ACLU is not entitled to the requested records because "R.C. 149.43(C) requires a prior request as a prerequisite to a mandamus action." *State ex rel. Taxpayers Coalition v. Lakewood* (1999), 86 Ohio St.3d 385, 390, 715 N.E.2d 179.

{¶ 34} Notwithstanding respondents' assertion to the contrary, if—as the ACLU alleges—TEC and its subordinate workgroups are merely committees or subcommittees of TAG and the board of commissioners, serving the records request on the board of commissioners and County Administrator McCafferty, who is also a member of TAG and a cochairperson of TEC, would constitute a sufficient records request. Notably, the county's response to the ACLU's request reasoned that the request was proper to the extent that it sought TAG records because McCafferty is a member of TAG, even though he was not named as a TAG member in the records request. Similarly, although McCafferty was not named as a TEC cochairperson and member in the ACLU's request, the county's rationale would also support the sufficiency of the request for records of TEC and its workgroups. This result is consistent with our duties to "construe the Public Records Act liberally in favor of broad access and resolve any doubt in favor of

disclosure of public records." *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6. Therefore, the ACLU's public-records mandamus claim does not lack merit due to an improper records request.

*Public Body Under R.C. 121.22*

**{¶ 35}** The ACLU next asserts that it is entitled to the requested writ of mandamus because R.C. 121.22 and 149.43 relate to the same subject matter and must be construed in pari materia so that if TEC and the transition workgroups meet the definition of "public body" and are subject to the Open Meetings Act, each necessarily satisfies the definition of "public office" and is subject to the Public Records Act as well.

**{¶ 36}** As noted previously, the court has recognized that R.C. 121.22 and 149.43 are construed in pari materia for purposes of maintaining a record of the proceedings of public bodies and making minutes of those proceedings available to the public. See, e.g., *State ex rel. Long v. Cardington Village Council* (2001), 92 Ohio St.3d 54, 56, 748 N.E.2d 58 ("Construing R.C. 121.22, 149.43, and 733.27 *in pari materia*, respondents, * * * [including] the village clerk * * *, have a duty to prepare, file, and maintain full and accurate minutes for council meetings, and to make them available for public inspection"); *White v. Clinton Cty. Bd. of Commrs.* (1996), 76 Ohio St.3d 416, 667 N.E.2d 1223, paragraph one of the syllabus ("R.C. 121.22, 149.43, and 305.10, when read together, impose a duty on all boards of county commissioners to maintain a full and accurate record of their proceedings").

**{¶ 37}** R.C. 121.22 and 149.43 are also arguably incorporated by reference in the applicable provisions of the Cuyahoga County Charter regarding open meetings and public records. See Cuyahoga County Charter, Sections 12.05 ("All meetings of the Council and any committee, board, commission, agency or authority of the County, as well as any similar body created by this Charter or by

the Council, shall be open to the public as provided by general law") and 12.06 ("Records of the County shall be open to the public as provided by general law").

{¶ 38} Nevertheless, we have never expressly held that once an entity qualifies as a public body for purposes of R.C. 121.22, it is also a public office for purposes of R.C. 149.011(A) and 149.43 so as to make all of its nonexempt records subject to disclosure. In fact, R.C. 121.22 suggests otherwise because it contains separate definitions for "public body," R.C. 121.22(B)(1), and "public office," R.C. 121.22(B)(4), which provides that " '[p]ublic office' has the same meaning as in section 149.011 of the Revised Code." Had the General Assembly intended that a "public body" for purposes of R.C. 121.22 be considered a "public office" for purposes of R.C. 149.011(A) and 149.43, it would have so provided.

{¶ 39} R.C. 121.22(B)(1) defines a "public body" subject to the Open Meetings Act to include the following:

{¶ 40} "(a) Any board, commission, committee, council, or similar decision-making body of a state agency, institution, or authority, and any legislative authority or board, commission, committee, council, agency, authority, or similar decision-making body of any county, township, municipal corporation, school district, or other political subdivision or local public institution.

{¶ 41} "(b) Any committee or subcommittee of a body described in division (B)(1)(a) of this section."

{¶ 42} The parties agree that TAG, which was created by Section 13.07 of the Cuyahoga County Charter as a decision-making body of the county, is a public body. At issue is whether TEC and the transition workgroups are also public bodies for purposes of R.C. 121.22. If TEC and the workgroups are committees or subcommittees of TAG, they are public bodies pursuant to R.C. 121.22(B)(1)(b).

{¶ 43} In construing this statute, "our obligation is to ascertain and give effect to the intent of the legislature as expressed in the statute." *Hudson v.*

*Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 30. "[W]e determine the legislative intent by reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, 909 N.E.2d 610, ¶ 18. A "committee" is a "subordinate group to which a deliberative assembly or other organization refers business for consideration, investigation, oversight, or action," Black's Law Dictionary (9th Ed.2009) 309, or "a body of persons delegated to consider, investigate, or take action upon and usu. to report concerning some matter or business," Webster's Third New International Dictionary (1986) 458. See *Berner v. Woods*, Lorain App. No. 07CA009132, 2007-Ohio-6207, ¶ 14 (the court applies a comparable dictionary definition to "committee" to hold that a "community block grant committee" was a "public body" pursuant to R.C. 121.22(B)(1)).

{¶ 44} Respondents' evidence establishes that TEC and the transition workgroups do not fit within the definition of "committee" of TAG so as to be a public body as defined in R.C. 121.22(B)(1). Neither the board of commissioners nor TAG referred or delegated business to TEC and the workgroups. Instead, two private entities, NCN and GCP, created TEC to oversee the creation of workgroups assembled under it. TAG did not delegate any of its charter-mandated duties to TEC and the workgroups and does not direct them. Although the ACLU cites some language in e-mails between individual TAG members and on the county website that suggests some assistance in providing the structure of the first workgroups, there is no indication that TAG as an entity acted to delegate to TEC and the workgroups its primary charter duty to "develop recommendations for the orderly and efficient transition to the operation of County government" under Section 13.07 of the charter. At best, the creation of TEC and the workgroups by NCN and GCP, at the invitation of the county, merely recognized the longstanding and important rights of private citizens to

14

"petition the Government" pursuant to the First Amendment to the United States Constitution and to "alter, reform, or abolish" government "whenever they may deem it necessary." Section 2, Article I, Ohio Constitution.

{¶ 45} The cases cited by the ACLU in support of its mandamus claims are inapposite because in those cases, the evidence was uncontroverted that the entity held to constitute a public body for purposes of the Open Meetings Act had been established or designated by some governmental entity. *Berner*, 2007-Ohio-6207 (community-block-grant committee created by township board); *Wheeling Corp. v. Columbus & Ohio River RR. Co.* (2001), 147 Ohio App.3d 460, 771 N.E.2d 263 (selection committee established by Ohio Rail Development Commission to evaluate and score proposals to operate state-owned rail line); *Cincinnati Enquirer v. Cincinnati* (2001), 145 Ohio App.3d 335, 762 N.E.2d 1057 (urban-design-review board created by city council); *Stegall v. Joint. Twp. Dist. Mem. Hosp.* (1985), 20 Ohio App.3d 100, 20 OBR 122, 484 N.E.2d 1381 (board of hospital governors established under R.C. 513.07 by townships); *Toledo Blade*, 61 Ohio Misc.2d 631, 582 N.E.2d 59 (community-action agency designated by Ohio Department of Development). No comparable evidence is apparent here.

*Functional Equivalent of a Public Office*

{¶ 46} For purposes of the Public Records Act, a public office subject to the act "includes any state agency, public institution, political subdivision, or any other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." R.C. 149.011(A). As a secondary matter, the ACLU argues that if the TEC and the workgroups are private entities, each is the functional equivalent of a public office and is subject to R.C. 149.43.

{¶ 47} Prior to 2006, we used different tests to determine whether a private entity was a public office subject to the Public Records Act. See, e.g., *State ex rel. Fox v. Cuyahoga Cty. Hosp. Sys.* (1988), 39 Ohio St.3d 108, 529

N.E.2d 443, paragraph one of the syllabus; *State ex rel. Freedom Communications, Inc. v. Elida Community Fire Co.* (1988), 82 Ohio St.3d 578, 579, 697 N.E.2d 210.

{¶ 48} In *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, at the syllabus, however, we modified the test for determining a private entity's status as a public institution under R.C. 149.011(A) by holding:

{¶ 49} "1.  Private entities are not subject to the Public Records Act absent a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office.

{¶ 50} "2.  In determining whether a private entity is a public institution under R.C. 149.011(A) and thus a public office for purposes of the Public Records Act, R.C. 149.43, a court shall apply the functional-equivalency test.  Under this test, the court must analyze all pertinent factors, including (1) whether the entity performs a governmental function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the entity was created by the government or to avoid the requirements of the Public Records Act."

{¶ 51} The ACLU has not established by the requisite clear and convincing evidence that TEC and its subordinate workgroups are the functional equivalent of public offices for purposes of the Public Records Act.  They are instead private groups comprising county leaders, county staff, and citizens; they are not performing TAG's charter-mandated duties but are instead submitting recommendations to TAG and the county in their capacities as coalitions of private citizens; they do not receive any funds or significant support from the county; they receive no guidance or direction from TAG or any other governmental agency and were not created by TAG or the county or to circumvent the requirements of R.C. 149.43.  Therefore, the ACLU's functional-

equivalence argument fails for lack of proof. See *Oriana House* at the syllabus; *State ex rel. Repository v. Nova Behavioral Health, Inc.*, 112 Ohio St.3d 338, 2006-Ohio-6713, 859 N.E.2d 936.

*Quasi-agency Theory*

**{¶ 52}** The ACLU finally argues that it is entitled to the public records of TEC and the transition workgroups based on the court's quasi-agency theory espoused in *State ex rel. Mazzaro v. Ferguson* (1990), 49 Ohio St.3d 37, 550 N.E.2d 464.

**{¶ 53}** "R.C. 149.43(C) manifests an intent to afford access to public records, even when a private entity is responsible for the records." Id. at 39. Therefore, "where (1) a private entity prepares records in order to carry out a public office's responsibilities, (2) the public office is able to monitor the private entity's performance, and (3) the public office has access to the records for this purpose, a relator in an R.C. 149.43(C) mandamus action is entitled to relief regardless of whether he also shows that the private entity is acting as the public office's agent." Id.

**{¶ 54}** The ACLU has not established that TEC and the workgroups carried out TAG's duty to provide transition recommendations to the county executive and county council, that TAG is able to monitor TEC's and the workgroups' performance, or that TAG has access to all of TEC's and the workgroups' records so that it could monitor them. Instead, it appears that TAG would have access only to the recommendations and records that TEC and the workgroups, within their discretion, submitted to it at the conclusion of their review process. TEC and the workgroups thus have no duty to provide TAG or the county with access to any of their records.

**Conclusion**

**{¶ 55}** The ACLU has not established its entitlement to the requested extraordinary relief in mandamus for its open-meetings and public-records

17

mandamus claims. The ACLU has failed to meet its burden of proving a clear legal right to the requested relief or a corresponding clear legal duty on the part of the respondents to provide it. Therefore, we deny the writ. Based on this holding, we need not address the claim of TEC and its members that holding them subject to the Sunshine Laws would violate their First Amendment rights to freedom of speech and association. See *State ex rel. Miller v. Brady*, 123 Ohio St.3d 255, 2009-Ohio-4942, 915 N.E.2d 1183, ¶ 11 (court need not address constitutional claims if it is not "absolutely necessary" to do so).

Writ denied.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Carrie L. Davis, Staff Counsel, James L. Hardiman, Legal Director, and Melvyn Durchslag, Michael T. Honohan, and Brian J. Laliberte, Cooperating Counsel, for relator.

William D. Mason, Cuyahoga County Prosecuting Attorney, and David G. Lambert and Charles E. Hannan, Assistant Prosecuting Attorneys, for respondents Cuyahoga County Board of Commissioners and the individual commissioners and Cuyahoga County Transition Advisory Group and its members.

Thompson Hine, L.L.P., Steven S. Kaufman, Kip T. Bollin, Gary L. Walters, Lorraine Evelyn Gaulding, and Barbara A. Lum, for respondents Cuyahoga County Transition Executive Committee and its members.

_____