Lanzinger, J.,
dissenting.
{¶ 26} Even when liberally interpreted, R.C. 121.22 has been limited in scope to the meetings of public bodies. I respectfully dissent from the majority’s judicial rewrite of what is commonly known as Ohio’s Sunshine Law or Open Meetings Act. While it may be a good idea to limit the use of e-mail to avoid statutorily required public meetings, that is the task of the General Assembly and not this court. I would affirm the judgment of the court of appeals, which, in my view, properly held that the e-mails in this case are not encompassed within the current statutory definition of “meeting.”
{¶ 27} The definition of the term “meeting” is found at R.C. 121.22(B)(2) and is relatively simple: “ ‘Meeting’ means any prearranged discussion of the public business of the public body by a majority of its members.” In spite of this plain declaration, the majority declares:
Nothing in the plain language of R.C. 121.22(B)(2) expressly mandates that a “meeting” occur face to face. To the contrary, it provides that any prearranged discussion can qualify as a meeting. Accordingly, R.C. 121.22 prohibits any private prearranged discussion of public business by a majority of the members of a public body regardless of whether the discussion occurs face to face, telephonically, by video conference, or electronically by e-mail, text, tweet, or other form of communication.
(Emphasis added in part.) Majority opinion at ¶ 15.
{¶ 28} In other words, the majority rewrites R.C. 121.22(B)(2) to redefine “meeting” to include all forms of communication, even though the statute does not refer to e-mail correspondence or anything like it. The Fifth District and two other appellate courts have refused to apply the statute to cover e-mails. See Haverkos v. Northwest Local School Dist. Bd. of Edn., 2005-Ohio-3489, 995 N.E.2d 862, ¶ 9 (1st Dist.) (“Ohio’s Sunshine Law does not cover e-mails”); Radtke v. Chester Twp., 2015-Ohio-4016, 44 N.E.3d 295, ¶ 31 (11th Dist.) (“the Open Meetings Act does not apply to e-mails”).
*83 {¶ 29} In expanding this case to include all forms of “communication” in its interpretation of “meeting,” the majority reaches into areas well beyond those covered by R.C. 121.22.
{¶ 30} It is critical to remember that Ohio’s Sunshine Law relates to open meetings. Meetings differ from other types of communication because they are events or gatherings at which real-time communication can occur. See, e.g., R.C. 1745.21(C) (meeting involves contemporaneous communication); R.C. 5312.04(D) (essential component of meeting is ability to communicate in real time). Because a meeting is an event that requires parties to participate at the same time, the requirement is that it be “prearranged.” R.C. 121.22(B)(2).
{¶ 31} We focused on the essential concept of a “meeting” as it applies to the Sunshine Law in State ex tel. Cincinnati Post v. Cincinnati, 76 Ohio St.3d 540, 668 N.E.2d 903 (1996). And we considered the three parts of the statutory definition:
A liberal construction of the definition of “meeting” would include the back-to-back sessions held by [city] council in this case. The elements of the statutory definition of a meeting are (1) a prearranged discussion, (2) a discussion of the public business of the public body, and (3) the presence at the discussion of a majority of the members of the public body. The council meetings certainly fit within the first two elements. As to the third element, back-to-back sessions discussing exactly the same public issues can be liberally construed as two parts of the same meeting. A majority of council members thus did attend the “meeting.”
Id. at 543.
{¶ 32} In Cincinnati Post, we held that the city council’s private back-to-back meetings, which, taken together, were attended by a majority of council members, violated R.C. 121.22. We noted the importance of meeting attendance rather than mere discussions between members:
The statute does not prohibit impromptu hallway meetings between council members — the statute concerns itself with prearranged discussions. It does not prohibit member-to-member prearranged discussions. The statute concerns itself only with situations where a majority meets. Although a majority of council members were not in the same room at the same time, a majority of them did attend a 'prearranged meeting to deliberate on issues of great interest to the public.
*84 (Emphasis added.) Id. at 544.
{¶ 33} The majority cites statutes and public policy found in other jurisdictions, but they of course have different statutes. And the policy of liberal interpretation does not stretch so far as to purge all the meaning from a statutory term. The purpose of the Sunshine Law is to “require public officials to take official action and to conduct all deliberations upon official business only in open meetings,” as R.C. 121.22(A) explains. We have considered the liberal application of R.C. 121.22 in a case in which it was argued that informal meetings were not subject to the Open Meetings Act or its requirement for minutes. State ex rel. Fairfield Leader v. Ricketts, 56 Ohio St.3d 97, 102, 564 N.E.2d 486 (1990).
{¶ 34} There we held that the act covers “more than just meetings authorized by a public body,” but that it “also refers to any meeting that the public body causes to take place.” Id. The key is that “the members of a public body agree to attend, in their official capacity, a meeting where public business is to be discussed and a majority of the members do attend.” Id.
{¶ 35} This is not to say that discussions through e-mails could never constitute a meeting. For instance, a board member could communicate independently with a majority of his or her fellow board members and prearrange for each of them to be available to send and receive e-mails at a specific day and time. The other board members could be anywhere — on a plane, at work, or at a child’s soccer practice — at the prearranged moment, but they all could still access their e-mails. The initiating board member would need to send only one e-mail jointly addressed to all of the awaiting board members, who, by replying to all addressees, could then engage in what is essentially a prearranged and real-time discussion with a majority of their fellow board members about a matter of public business. I believe that such a situation could constitute a “meeting” within the definition of that term in R.C. 121.22(B)(2).
{¶ 36} Given the General Assembly’s exhortation that the Open Meetings Act “shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings,” R.C. 121.22(A), we must be wary of any attempt to avoid the transparency that the public deserves. As one commentator recently noted:
As technological advances revolutionize communication patterns in the private and public sectors, government actors must consider their reactions carefully. Public representatives may take advantage of modern technology to improve communications with constituents and to operate more efficiently. However, this progress must be made with an eye to complying with certain statutory restrictions placed on public bodies.
*85 Phillip L. Harmon, Attorney at Law, L.L.C., and Phillip L. Harmon, for appellant.
Crabbe, Brown & James, L.L.P., and John C. Albert, for appellees.
Baker Hostetler, L.L.P., and David L. Marburger, urging reversal for amici curiae, Ohio Coalition for Open Government, Common Cause Ohio, and the League of Women Voters of Ohio.
(Footnote omitted.) Roeder, Transparency Trumps Technology: Reconciling Open Meeting Laws with Modem Technology, 55 Wm. & Mary L.Rev. 2287, 2288 (2014).
{¶ 37} However, in this case there is no allegation that discussions were either prearranged or that they occurred in real time. Therefore, the subject e-mails do not qualify as a “meeting” as the term is currently defined.
{¶ 38} It may well be a good idea for the General Assembly to consider expanding the reach of the law to prohibit a majority of members of a public body from e-mailing each other to avoid the Sunshine Law. It should reexamine the law and take action to ensure that the Sunshine Law will continue to promote transparency in government as technology changes.
{¶ 39} But a majority of this court should not add language that has not been fully considered by the public’s legislative representatives. The unintended consequences of broadening the word “meeting” beyond its current definition could affect adversely how members of public bodies do their business.
{¶ 40} I would affirm the judgment of the court of appeals.
O’Connor, C.J., concurs in the foregoing opinion.